**Honorable Robert B. Leighton**

1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA

8

9  | THE WATTLES COMPANY, a Washington corporation,

10 |                          Plaintiff,

11 |        vs.

12 | VERLAN FIRE INSURANCE COMPANY, a New Hampshire corporation, et al.,

13 |

14 |                          Defendants.

No. 3:14-cv-05097-RBL

DEFENDANT VERLAN FIRE
INSURANCE COMPANY'S MOTION FOR
SUMMARY JUDGMENT DISMISSAL RE:
PLAINTIFF'S CLAIMS

**Noted for Consideration:**
**Friday, July 11, 2014**

15

16

### I.     <u>RELIEF REQUESTED</u>

17

18         Verlan Fire Insurance Company ("Verlan") respectfully requests the Court to enter an

order dismissing plaintiff The Wattles Company's ("Plaintiff" and/or "Wattles") claims against

19

Verlan pursuant to the "known loss" doctrine.   The alleged damages caused by Exide

20

Corporation's ("Exide") former operations at Plaintiff's property were known by Plaintiff prior

21

to procuring Verlan's first party property insurance policies for the November 1, 2011 to

22

November 1, 2012 and November 1, 2012 to November 1, 2013 policy periods.

23

DEFENDANT VERLAN FIRE INSURANCE COMPANY'S MOTION FOR
SUMMARY JUDGMENT DISMISSAL RE: PLAINTIFF'S CLAIMS – PAGE 1
CAUSE NO. 3:14-cv-05097-RBL

1118185 / 520.0005

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
901 FIFTH AVENUE • SUITE 1400
SEATTLE, WASHINGTON 98164-1039
(206) 689-8500 • (206) 689-8501 FAX

## II.   STATEMENT OF FACTS

**A.   Plaintiff's Use of Property / Lease to Exide Technologies.**

The subject property is located at 1901-2005 Fryer Avenue, Sumner, Washington, an industrial / warehousing area. (*See* Dkt. #3).   Lead-acid battery operations, including battery assembly, filling, and charging were conducted at the property from 1981 – 2009 [28 years].

Wattles entered into a lease agreement with GWB Corporation (nka Exide Technologies) on August 11, 1981 for the October 1, 1981 to September 30, 1986 lease term. (*See* Declaration of Martin J. Pujolar ["Pujolar Dec."] submitted herewith, ¶2).   The leased property is located in Sumner, Pierce County, Washington, and included "Northerly 86,400 square feet of Lot 2" and "approximately 85,000 square feet of property adjoining to the west as shown on Exhibit "A"". (*Id.*)   Under the terms of the lease, Exide used the demised premises for "marketing, processing, and storage of battery products and related activities." (*Id.*)

On August 11, 1986, Wattles entered into a lease agreement with General Battery Corporation [GWB Corporation's parent company] for the October 1, 1986 to September 30, 1996 lease term. (*Id.* at ¶3).   The leased property and use thereof remained the same as the October 1, 1981 to September 30, 1986 lease. (*Id.*)

On August 2, 1999, Wattles entered into a lease agreement with Exide Corporation for the October 1, 1999 to September 30, 2009 lease term. (*Id.* at ¶4).   The leased property remained the same, but included the address "1911-2001 Fryar Avenue". (*Id.*)   The use of the property included "marketing, processing, distribution, and storage of lead-acid batteries, battery products and related activities." (*Id.*)   In addition to filling and charging batteries,

DEFENDANT VERLAN FIRE INSURANCE COMPANY'S MOTION FOR
SUMMARY JUDGMENT DISMISSAL RE: PLAINTIFF'S CLAIMS – PAGE 2
CAUSE NO. 3:14-cv-05097-RBL

1118185 / 520.0005

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
901 FIFTH AVENUE • SUITE 1400
SEATTLE, WASHINGTON  98164-1039
(206) 689-8500 • (206) 689-8501 FAX

1    Exide stored and used hazardous materials and performed wastewater recycling and treatment

2    at the property.

3            On August 2, 1999, an Addendum was added to the August 2, 1999 lease between

4    Wattles and Exide.  (*Id*. at ¶5).  The Addendum states, in part:

> Landlord and tenant agree that tenant has made modifications and additions to
> the premises under the prior lease…and that the premises has experienced
> extraordinary (i.e. beyond normal) wear and tear during the period of the prior
> leases by virtue of the tenants activities on the premises…
>
> * * * * *
>
> Tenant acknowledges that **extraordinary wear and tear has occurred to the
> building in general and specifically to the floor in the area of the battery
> formation an acid farm area…**
>
> * * * * *
>
> Tenant agrees that prior to the end of the term of the Lease or any sooner
> termination, Tenant will remove any structures and make any and all repairs
> necessary to remedy the affect Tenant's activities on the Premises …
>
> * * * * *
>
> … Tenant shall be specifically required to take all remedial action and to clean-
> up and remove from the Premises the contaminants, hazardous materials or
> environmental waste which may have been generated by Tenants and/or are
> present on the Premises by virtue of Tenants' activities between August 11,
> 1981 and the termination of the Lease.  Any such remedial actions shall be
> undertaken to achieve a clean-up standard that is consistent with the applicable
> government requirements, laws and regulations …

(*Id*.)

            Exide ceased their battery "formation" operations in 2009 and were merely storing

batteries at the location thereafter. Exide sent a letter to Puget Sound Clean Air Agency, dated

October 16, 2009, stating in pertinent part:

DEFENDANT VERLAN FIRE INSURANCE COMPANY'S MOTION FOR
SUMMARY JUDGMENT DISMISSAL RE: PLAINTIFF'S CLAIMS – PAGE 3
CAUSE NO. 3:14-cv-05097-RBL

1118185 / 520.0005

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
901 FIFTH AVENUE • SUITE 1400
SEATTLE, WASHINGTON  98164-1039
(206) 689-8500 • (206) 689-8501 FAX

> As of March 31, 2009, Exide Technologies has discontinued filling and charging batteries at its facility at 2005 Fryar Ave., Sumner, WA 98390.
>
> All of the filling and charging equipment (emission sources), acid storage tanks and water treatment equipment have been removed from the building. …
>
> Due to the fact that Exide has ceased these operations and removed the source of emissions from the facility, Exide requests the termination of the Notice to Construction #9644 and Registration #28521.

* * * * *

(*Id.* at ¶6).

In August 2009, the lease between Wattles and Exide was amended to reduce the leased square footage to 33,946 sf. and to extend the term of the lease three years until September 30, 2012. (*Id.* at ¶7).   Exide ceased its battery "formation" operations in 2009 and were merely storing batteries at the location.  The subject property [1901 – 2005 Fryar Avenue, Sumner, WA 98390] has been vacant from at least September 30, 2012, if not earlier.

**B.   Examination Under Oath of Plaintiff**

The Examination Under Oath ("EUO") of Craig B. Wattles regarding the alleged loss and damages at the subject property was conducted on January 24, 2014.  (*See* Pujolar Dec., ¶8).  Mr. Wattles has been the president of The Wattles Company since 1983 and testified as a representative and on behalf of The Wattles Company.  (*Id.*; p. 9, ln. 10-25).   Mr. Wattles alleges that the entire wood truss and roof system is damaged as well as areas of eroded concrete.  (*Id.*; p. 34, ln. 4-21).  According to Mr. Wattles, the alleged damage to the roofing system [trusses and structural support] and concrete was caused by the release of acid from Exide's former battery formation operation which was "deposited throughout all surfaces of the

DEFENDANT VERLAN FIRE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT DISMISSAL RE: PLAINTIFF'S CLAIMS – PAGE 4
CAUSE NO. 3:14-cv-05097-RBL

1118185 / 520.0005

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
901 FIFTH AVENUE • SUITE 1400
SEATTLE, WASHINGTON 98164-1039
(206) 689-8500 • (206) 689-8501 FAX

building." (*Id.*; p. 43, ln. 8-24).   The alleged property damage for which Plaintiff seeks coverage was caused by Exide's activities:

> Q.     So was it The Wattles Company position that Exide caused the property damage.
>
> A.     The – yes, Exide's activities resulted.
>
> Q.     In the property damage that we're talking about today?
>
> A.     Yes.

(*Id.*; p. 44, ln. 11-15).

Mr. Wattles observed concrete damage from Exide's operation in 1999, if not earlier. (*Id.*; p. 50, ln. 7-12).   Mr. Wattles was aware of concrete damage from Exide's operation and the release of sulfuric acid in 1999.  (*Id.*; p. 54, ln. 5-10; p. 54, ln. 18 – p. 55, ln. 5).   Mr. Wattle's expected the concrete damage to continue to occur over the life the lease with Exide. (*Id.*; p. 56, ln. 5-8).   This is the same type of concrete damage for which Plaintiff is seeking recovery in this matter.  (*Id.*; p. 53, ln. 8-13).

Mr. Wattles confirmed that Exide moved out of the premises in 2009.  (*Id.*; p. 41, ln. 1-2).   Mr. Wattles testified that Plaintiff became aware of "problems" at the property in late 2010 or early 2011, including truss breaks and staining of the concrete floors caused by dripping of "material" from the above-ground structures.   According to Mr. Wattles, there was "significant" main truss break in 2010 allegedly affecting the strength of the building.  (*Id.*; p. 38, ln. 7-22).   Mr. Wattles' reported the truss break to The Wattles Company's insurer covering the property at the time [Fireman's Fund / Allianz].  (*Id.*; p. 38, ln. 7-22; p. 11, ln. – p. 12, ln. 15).   Shortly thereafter, Mr. Wattles observed stained concrete caused by dripping of "material" from the structures above:

DEFENDANT VERLAN FIRE INSURANCE COMPANY'S MOTION FOR
SUMMARY JUDGMENT DISMISSAL RE: PLAINTIFF'S CLAIMS – PAGE 5
CAUSE NO. 3:14-cv-05097-RBL

1118185 / 520.0005

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
901 FIFTH AVENUE • SUITE 1400
SEATTLE, WASHINGTON 98164-1039
(206) 689-8500 • (206) 689-8501 FAX

A.      … Exide, when they moved out, they replaced all of the floors in the formation area.  So, there's a brand new concrete floor.  And we were walking the building, and we noticed a grid pattern of staining on the concrete.  … And then we looked up and noticed that it was directly underneath the fire lines and under the truss lines.  Due to the coloration of it, we were concerned.

Exide brought in Phillips Service to do a complete environmental cleaning of the building when they moved out.  To see staining after an environmental company has cleaned the building was concerning.  So, then we brought in an environmental company to test it.  And it was a problem.  It showed we had a problem.

Q.      Let me just clarify a couple of things.  This grid pattern that you were noticing in the concrete, **this was happening in 2010; is that right**?

A.      **That's when we first noticed it**.

(*Id.*; p. 40, ln. 6-25).  (Emphasis added).

Mr. Wattles further testified that water condensed on the trusses to the point where it dripped to the floor resulting in the 2010 grid patterns on the concrete:

A.      … the building is not heated, but the [prior] manufacturing [by Exide] provided enough heat.  The sprinkler systems are … wet systems, meaning they contain water all year round …

Wet systems are subject to freezing.  We had a cold snap, so we brought in kerosene heaters to heat the space, make sure we didn't freeze.  Those – since you're – the combustion is in the building, you put out a lot of water into the air, and the water condensed.  Water condensed on the upper structure to the point where it dripped.  If we hadn't done that, might not have noticed it.

Q.      So you think those drips were actually what was causing the grid pattern on the concrete?

A.      The grid – **the water was pulling material – dripping the material that was already up there down.**  (Emphasis added).

(*Id.*; p. 41, ln. 16 to p. 42, ln. 9).

DEFENDANT VERLAN FIRE INSURANCE COMPANY'S MOTION FOR
SUMMARY JUDGMENT DISMISSAL RE: PLAINTIFF'S CLAIMS – PAGE 6
CAUSE NO. 3:14-cv-05097-RBL

1118185 / 520.0005

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
901 FIFTH AVENUE • SUITE 1400
SEATTLE, WASHINGTON  98164-1039
(206) 689-8500 • (206) 689-8501 FAX

It was at this time, i.e. late 2010 or early 2011, that Plaintiff started "looking at the environmental conditions" as the cause of damage to the building.  (*Id.*; p. 40, ln. 1-21). Plaintiff is seeking to recover the exact same property damages in this matter against the Defendant insurers that it is seeking to recover from Exide in Pierce County Superior Court. (*Id.*; p. 61, ln. 9-17).

## C.   Plaintiff's Pre-Suit Claims Re: Exide.

Plaintiff, The Wattles Company, hired Environmental Management Services, LLC ("EMS") to complete a site reconnaissance and environmental assessment of the subject property. (*See* Pujolar Dec., ¶9).  EMS prepared a written report for Plaintiff, dated January 28, 2011.  (*Id.*)  The objective of EMS's investigation was to review the environmental conditions related to Exide's former battery manufacturing operations to identify the environmental impact to the structure and property as a result of Exide's operations.  (*Id.*)  On **January 20, 2011**[1], EMS met onsite with Wattles Company representative Taylor Balduff, and conducted a site investigation.  (*Id.*)  EMS used a scissor lift to inspect the building trusses.  (*Id.*)  EMS reported the following regarding its inspection of the building trusses:

> EMS personnel used a scissor lift, provided by the Wattles Company, to inspect several trusses and joints.  **There was a burned/charred appearance (Photo 01) to all of the horizontal truss surfaces**.  The trusses at the far northeast (Figure 1) appeared to be more severely charred, with a curled and peeled surface.  The majority of the beams had a blackened surface which was sticky to the touch.  **All of the metal truss plates and rivets exhibited extreme corrosion** (Photo 04).  **White oxidized material was present at a depth of 0.25 to 0.50 inches on all of metal surfaces inspected**.  This included pipes, heating ducts, and structural supports as well as the truss joints and plates.  The oxidation of the metal and the charring of the wood appeared to decrease as the distance from the north wall increased.  (*Id.*) (Emphasis added).

---

[1] EMS produced a report dated **January 28, 2011**.  (*See* Pujolar Dec., ¶9).  Figure No. 2 to Attachment "A" of the report contains photographs of "residue" and corrosion on the trusses, truss joints, truss plates and piping.  (*Id.*) The photographs are dated **January 4, 2010**.  (*Id.*)

DEFENDANT VERLAN FIRE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT DISMISSAL RE: PLAINTIFF'S CLAIMS – PAGE 7
CAUSE NO. 3:14-cv-05097-RBL

1118185 / 520.0005

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
901 FIFTH AVENUE • SUITE 1400
SEATTLE, WASHINGTON  98164-1039
(206) 689-8500 • (206) 689-8501 FAX

1   EMS also inspected staining on the concrete floor and concrete post supports.  (*Id.*)

2   EMS observed extreme staining and pitting of the cement floors and walls of the building.  (*Id.*)

3   The floor staining and pitting was spread throughout the structure and appeared at regular

4   intervals under the truss joints.  (*Id.*)

5       EMS concluded and advised Wattles that "the low pH levels found on surfaces and

6   duct systems at the site constitute a potential problem for the structural integrity of the building.

7   It is highly probable that the cement has been impregnated with lead and the ground beneath

8   the cement and outside the building may be impacted." (*Id.*)

9       On or about **March 1, 2011**, Plaintiff's counsel at the time, Kurt B. Peterson of the

10   Cascadia Law Group, sent a letter to Exide demanding Exide to take action to "mitigate

11   Wattles' ongoing damages." (*See* Pujolar Dec., ¶10).  Plaintiff's letter provides in part:

12       In Wattles' effort to release the space, Wattles discovered that the vacated space
         continues to present significant environmental, health, and safety concerns as a

13       result of Exide's activities at the Premises and remaining contamination.
         Wattles engaged Environmental Management Services, LLC to perform an

14       environmental assessment of the Premises, a copy of which is enclosed. Wattles
         has been compelled to remove the property from the market, and it remains

15       unleasable and unmarketable in its present condition. **Wattles has been and
         continues to be significantly damaged.** (Emphasis added).

16
     (*Id.*)
17

18       On **April 8, 2011**, Plaintiff's counsel, Joseph Rehberger of the Cascadia Law Group,

19   sent Exide a follow-up letter demanding Exide to take action to resolve Plaintiff's ongoing

20   damages from Exide's former operations.  (*See* Pujolar Dec., ¶11).

21       On **April 25, 2011**, Plaintiff's counsel, Joseph A. Rehberger of Cascadia Law Group,

22   sent Exide a "Renewed Notice of Default and Demand." (*See* Pujolar Dec., ¶12).  Plaintiff

23   reiterated that "it has been and continues to be damaged by and suffer losses directly resulting

DEFENDANT VERLAN FIRE INSURANCE COMPANY'S MOTION FOR
SUMMARY JUDGMENT DISMISSAL RE: PLAINTIFF'S CLAIMS – PAGE 8
CAUSE NO. 3:14-cv-05097-RBL

1118185 / 520.0005

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
901 FIFTH AVENUE • SUITE 1400
SEATTLE, WASHINGTON  98164-1039
(206) 689-8500 • (206) 689-8501 FAX

from the residual contamination left at the Vacated Space following Exide's vacation of the same." (*Id.*) **Plaintiff further stated that it continued to incur damages related to the hazardous waste, contamination, and structural integrity issues arising out of Exide's activities**. (*Id.*) Plaintiff attached a draft complaint to its **April 25, 2011 letter**. (*Id.*) The complaint alleged the following:

- 3.8    In or around **January 2011**, Wattles retained Environmental Management Services ("EMS") to complete a limited environmental review and assessment of the environmental conditions at the Vacated Premises and associated property as a result of Exide's operations. EMS's investigation verified the presence of a number of environmental issues of concern, including high concentrations of lead, chromium, and hexavalent chromium, and concluded that that presence of these hazardous substances constitute a health and safety issue. … (Emphasis added).

- 3.9    EMS also verified low pH levels on the surface of overhead beams, the metal surfaces of the truss structures, and duct systems. EMS concluded that the low pH levels constitute a potential problem for the structural integrity of the warehouse building.

- 3.12    Despite demand, Exide has refused to investigate, address, or remediate issues related to the structural integrity of the warehouse building.

- 3.13    Despite demand, Exide has refused to indemnify and reimburse Wattles for costs Wattles has incurred to investigate and address remediation issues related to environmental concerns and structural integrity of the Vacated Premises.

- 3.14    Because of the unremedied environmental, health and safety, and structural concerns resulting from Exide's tenancy of the Vacated Premises, Wattles is unable to market the Vacated Premises and associated property for rent, lease, or sale.

(*Id.*)

    Mr. Wattles testified during his EUO that Plaintiff is seeking to recover the exact same property damages in this matter against the Defendant insurers, including Verlan, that it is seeking to recover from Exide in Pierce County Superior Court. The draft complaint attached

DEFENDANT VERLAN FIRE INSURANCE COMPANY'S MOTION FOR
SUMMARY JUDGMENT DISMISSAL RE: PLAINTIFF'S CLAIMS – PAGE 9
CAUSE NO. 3:14-cv-05097-RBL

1118185 / 520.0005

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
901 FIFTH AVENUE • SUITE 1400
SEATTLE, WASHINGTON  98164-1039
(206) 689-8500 • (206) 689-8501 FAX

to Plaintiff's April 25, 2011 letter to Exide includes the same allegations as Plaintiff's complaint ultimately filed against Exide in Pierce County Superior Court on March 28, 2013 [discussed below].

**D.      Verlan's Insurance Policies.**

Verlan Fire Insurance Company issued the following first party insurance policies to The Wattles Company:

- Verlan policy no. M00275711, effective November 1, 2011 – November 1, 2012
- Verlan policy no. M00275712, effective November 1, 2012 – November 1, 2013[2]

(*Id.* at ¶13 and ¶14).

One of the insured locations under Verlan's policies is 1901-2005 Fryer Avenue, Sumner, Washington 98390.  (*Id.*)  Verlan's policy no. M00275712, effective November 1, 2012 – November 1, 2013, was a renewal of Verlan policy no. M00275711, effective November 1, 2011 – November 1, 2012.  (*Id.*)  The Verlan policies and contains the same policy terms, conditions, and exclusions.  (*Id.*)    Verlan's "policy applies only to losses that occur during the policy period[s]" and does not provide coverage for vacant or idle buildings or business income and expenses.  (*Id.*)

**E.      Plaintiff's Lawsuit Against Exide.**

On March 28, 2013, Plaintiff The Wattles Company filed a complaint against Exide Technologies, Inc. and Exide Corporation in Pierce County Superior Court, Case No. 13-2-07695-6, asserting causes of action for Breach of Contract, Washington Model Toxics Control Act, Declaratory Judgment, Trespass, Nuisance, Breach of Duty of Good Faith, Negligence,

---

[2] **Plaintiff has agreed to dismiss its claims against Verlan policy no. M00275712, effective November 1, 2012 – November 1, 2013.  The parties will be submitting a stipulation and order for dismissal.**

DEFENDANT VERLAN FIRE INSURANCE COMPANY'S MOTION FOR
SUMMARY JUDGMENT DISMISSAL RE: PLAINTIFF'S CLAIMS – PAGE 10
CAUSE NO. 3:14-cv-05097-RBL

1118185 / 520.0005

FORSBERG & UMLAUF, P.S.
ATTORNEYS AT LAW
901 FIFTH AVENUE • SUITE 1400
SEATTLE, WASHINGTON  98164-1039
(206) 689-8500 • (206) 689-8501 FAX

Property Damage, and Strict Liability for Abnormally Dangerous Activity.   (*Id.* at ¶15).

Plaintiff's complaint against Exide alleges the following:

- 3.3    Wattles and Exide entered into a written lease agreement dated August 2, 1999, and executed in October 1999.

- 3.4    Exide has used the warehouse building and Property as a lead acid battery manufacturing facility since on or around August 11, 1981.

- 3.13    Exide has admitted that the Property experienced damages beyond normal wear and tear due to Exide's activities and the Property both in general and specifically to the floor area in the battery formation and acid farm area at the Property.

- 3.14    In 2009, Exide vacated the approximate north half of the warehouse building (the "Vacated Premises").  In or around September 2009, Exide and Wattles entered into a First Amendment of Lease which reduced the leased portion of the warehouse building and Property to approximately 32,446 square feet of warehouse building space and approximately 1,500 square feet of office space.

- 3.15    Exide's lease of the Vacated Premises ceased and terminated on September 30, 2009.

- 3.18    In or around **January 2011**, Wattles retained Environmental Management Services ("EMS") to complete a limited environmental review and assessment of the environmental conditions at the Vacated Premises and associated property as a result of Exide's operations.  (Emphasis added).

- 3.19    EMS's investigation verified the presence of a number of environmental issues of concern, including high concentrations of lead, chromium, and hexavalent chromium, and concluded that the presence of these substances constitutes and health and safety hazard.

- 3.20    EMS also verified low pH levels on the surface of overhead beams, the metal surfaces of the truss structures, and duct systems.  EMS concluded that the low pH levels have compromised and continue to threaten the structural integrity of the warehouse building.

- 4.9    Exide failed to keep the property in good order, condition, and repair insofar as Exide's operations resulted in significant damage to the floor, walls, ceiling, beams, pipes, and other structural elements of the Property. … (*Id.*)

DEFENDANT VERLAN FIRE INSURANCE COMPANY'S MOTION FOR
SUMMARY JUDGMENT DISMISSAL RE: PLAINTIFF'S CLAIMS – PAGE 11
CAUSE NO. 3:14-cv-05097-RBL

1118185 / 520.0005

FORSBERG & UMLAUF, P.S.
ATTORNEYS AT LAW
901 FIFTH AVENUE • SUITE 1400
SEATTLE, WASHINGTON  98164-1039
(206) 689-8500 • (206) 689-8501 FAX

On or about July 11, 2013, a Notice of Stay of Plaintiff's lawsuit against Exide was filed in Pierce County Superior Court pending Exide's bankruptcy proceedings. (*Id.* at ¶16).

**F.    Plaintiff's Claims Re: Verlan and Defendant Insurers**

On or about September 27, 2013 [subsequent to Exide's bankruptcy filing], Plaintiff's counsel sent a Notice of Loss on behalf of Plaintiff to Plaintiff's insurance brokers, Wells Fargo Insurance and Propel Insurance, requesting the Notice of Loss to be transmitted to all carriers issuing polices to Plaintiff from 1982 – 2013. (*Id.* at ¶17). On or about October 4, 2013, Plaintiff's counsel sent Plaintiff's First Supplemental Notice of Loss to Wattles' insurance brokers identifying additional policies. (*Id.* at ¶18). Verlan received notice of the loss for the first time on October 8, 2013. (*Id.* at ¶19). On October 11, 2013, Verlan sent a letter to Plaintiff's counsel acknowledging Plaintiff's Notice of Loss. (*Id.* at ¶20). On October 23, 2011, Verlan sent a reservation of rights letter to Plaintiff's counsel advising that Verlan was in the process of investigating the loss, including investigation of the date of discovery, assessment of damages, and review of supporting documents. (*Id.* at ¶21). On October 28, 2013, Plaintiff's counsel provided notice that access to the site would be provided to the insurers on November 13, 2013. (*Id.* at ¶22). Verlan participated in the project inspection.

On or about January 15, 2014, Plaintiff produced a copy of WJE's scope of repair report. (*Id.* at ¶23). On or about January 27, 2014, Plaintiff's counsel produced Sellen Construction's cost or repair estimate based upon WJE's repair recommendations and requested the insurers' coverage determination at their "earliest opportunity". (*Id.* at ¶24). Thereafter, despite the insurers' ongoing investigation based upon Plaintiff's recent and

DEFENDANT VERLAN FIRE INSURANCE COMPANY'S MOTION FOR
SUMMARY JUDGMENT DISMISSAL RE: PLAINTIFF'S CLAIMS – PAGE 12
CAUSE NO. 3:14-cv-05097-RBL

1118185 / 520.0005

FORSBERG & UMLAUF, P.S.
ATTORNEYS AT LAW
901 FIFTH AVENUE • SUITE 1400
SEATTLE, WASHINGTON 98164-1039
(206) 689-8500 • (206) 689-8501 FAX

1   ongoing production of information [i.e. WJE and Sellen reports], on February 4, 2014, Plaintiff

2   filed suit against the defendant insurers, including Verlan. (*See* Dkt. #3).

3        Plaintiff alleges that its property located at 1901-2005 Fryer Avenue, Sumner,

4   Washington has sustained direct physical loss and/or damages due to perils covered, and not

5   excluded, by the polices of insurance issued by the defendant insurers, including Verlan. (*Id.*)

6   Plaintiff alleges that defendant insurers have wrongfully refused to properly investigate or

7   acknowledge coverage for the damages, losses, costs, fees, liabilities, and expenses incurred or

8   to be incurred by Plaintiff related to the property. (*Id.*) Plaintiff is seeking to recover the exact

9   same property damages in this matter against the Defendant insurers that it is seeking to

10   recovery from Exide in Pierce County Superior Court. (*Id.* at ¶8; p. 61, ln. 9-17).

## III.   ISSUE PRESENTED

12        Whether Plaintiff's claims against Verlan should be dismissed where the alleged

13   damages caused by Exide Corporation's former operations were known by Plaintiff prior to the

14   procurement of Verlan's first party property insurance policies for the November 1, 2011 to

15   November 1, 2012 and November 1, 2012 to November 1, 2013 policy periods?

## IV.   EVIDENCE RELIED UPON

17        This motion is based upon the records and pleadings already on file in this matter and

18   the Declaration of Martin J. Pujolar and exhibits attached thereto.

## V.   AUTHORITY/ARGUMENT

20   **A.   Summary Judgment Standard.**

21        Summary judgment is proper when the pleadings, depositions, and admissions on file

22   demonstrate that there is no genuine issue of material fact and that the moving party is entitled

DEFENDANT VERLAN FIRE INSURANCE COMPANY'S MOTION FOR
SUMMARY JUDGMENT DISMISSAL RE: PLAINTIFF'S CLAIMS – PAGE 13
CAUSE NO. 3:14-cv-05097-RBL

1118185 / 520.0005

FORSBERG & UMLAUF, P.S.
ATTORNEYS AT LAW
901 FIFTH AVENUE • SUITE 1400
SEATTLE, WASHINGTON 98164-1039
(206) 689-8500 • (206) 689-8501 FAX

1  to judgment as a matter of law.  CR 56 (c); *Kesinger v. Logan*, 113 Wn.2d 320, 325, 779 P.2d

2  263 (1989).  The party opposing summary judgment must submit "competent testimony setting

3  forth specific facts, as opposed to general conclusions to demonstrate a genuine issue of

4  material fact." *Thompson v. Everett Clinic*, 71 Wn. App. 548, 555, 860 P.2d 1054 (1993). If a

5  non-moving party fails to make a showing sufficient to establish the existence of an element of

6  that party's case, and on which that party bears the burden of proof at trial, then summary

7  judgment should be granted.  *Young v. Key Pharmaceuticals, Inc.*, 112 Wn.2d 216, 225, 770

8  P.2d 182 (1989).

9  **B.**   **Plaintiff's claims against Verlan are precluded by the "Known Loss" Doctrine.**

10      The "known loss" doctrine is also referred to as the "loss-in-progress" doctrine.

11  *Hillhaven Properties Limited v. Sellen Construction Company, Inc.*, 133 Wn.2d 751, 758, 948

12  P.2d 796 (1997).  The "known loss" doctrine applies to first-party and third-party insurance

13  cases.  *Id.* at 768.  The "known loss" doctrine prevents an insured from collecting on an

14  insurance policy where, prior to policy inception, the insured possessed knowledge of a

15  "substantial probability" that it would face the same type of loss or suit that eventually

16  occurred.  *Pub. Util. Dist. No. 1 v. Int'l Ins. Co.*, 124 Wn.2d 789, 807-08, 881 P.2d 1020

17  (1994).

18      In *Time Oil Company v. Cigna Property & Casualty Insurance Company*, 743 F. Supp.

19  1400, 1414-1415 (W. D. Wash. 1990), the court, applying Washington law, held that the risk of

20  liability is known if the insured receives notice indicating a substantial probability that a loss

21  would occur.  The Court in *Time Oil* found that there was no coverage because the process

22  causing the loss had already begun.  *Id.* at 1415; *see also, City of Okanogan v. Cities Insurance*

23

DEFENDANT VERLAN FIRE INSURANCE COMPANY'S MOTION FOR
SUMMARY JUDGMENT DISMISSAL RE: PLAINTIFF'S CLAIMS – PAGE 14
CAUSE NO. 3:14-cv-05097-RBL

1118185 / 520.0005

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
901 FIFTH AVENUE • SUITE 1400
SEATTLE, WASHINGTON 98164-1039
(206) 689-8500 • (206) 689-8501 FAX

1   *Association*, 72 Wn. App. 697, 701 (1994) (if an event causing loss is not unknown prior the

2   effective date of the policy, there is no coverage). *Accord, Town Tieton v. General Insurance*

3   *Company of America*, 61 Wn.2d 716, 380 P.2d 127 (1963). The dispositive issue is whether

4   the insured had notice prior to purchasing the policy. *Overton v. Consolidated Ins. Co.*, 145

5   Wn.2d 417, 426, 38 P.3d 322 (2002).

6       Here, Plaintiff was on notice and knew that Exide's former operations were causing

7   damage to the property prior to the effective date of Verlan's November 1, 2011 policy. On or

8   about August 2, 1999, an Addendum was added to the August 2, 1999 lease between Wattles

9   and Exide acknowledging that Exide's operations and activities were causing "extraordinary

10  wear and tear … **to the building in general** and specifically to the floor in the area of the

11  battery formation an acid farm area". (*See* Pujolar Dec., ¶5). Plaintiff had knowledge in 1999

12  [if not earlier] that Exide's operations were causing damage "to the building in general."

13      Mr. Wattles testified during is Examination Under Oath that the alleged damage to the

14  roofing system [trusses and structural support] and concrete was caused by the release of acid

15  from Exide's former battery formation operations which was "deposited throughout all surfaces

16  of the building." (*See* Pujolar Dec., ¶8; p. 43, ln. 8-24). Consistent with the 1999 lease

17  addendum, Mr. Wattles observed concrete damages from Exide's operations and release of

18  sulfuric acid in 1999, if not earlier. (*Id.*; p. 50, ln. 7-12; p. 54, ln. 5-10; p. 54, ln. 18 – p. 55, ln.

19  5). This is the same type of damage for which Plaintiff is seeking recovery in this matter. (*Id.*;

20  p. 53, ln. 8-13). Mr. Wattle's expected the concrete damage to continue to occur over the life

21  the lease with Exide. (*Id.*; p. 56, ln. 5-8).

22

23

DEFENDANT VERLAN FIRE INSURANCE COMPANY'S MOTION FOR
SUMMARY JUDGMENT DISMISSAL RE: PLAINTIFF'S CLAIMS – PAGE 15
CAUSE NO. 3:14-cv-05097-RBL

1118185 / 520.0005

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
901 FIFTH AVENUE • SUITE 1400
SEATTLE, WASHINGTON  98164-1039
(206) 689-8500 • (206) 689-8501 FAX

Mr. Wattles further testified that Plaintiff noticed and was aware of "problems" at the property in late 2010 or early 2011, including truss breaks and staining of the concrete floors caused by dripping of "material" [sulfate dust] from the trusses above. There was a "significant" main truss break in 2010 allegedly affecting the strength of the building. (*Id.*; p. 38, ln. 7-22). Mr. Wattles' reported the truss break to The Wattles Company's insurer covering the property at the time [Fireman's Fund / Allianz]. (*Id.*; p. 38, ln. 7-22; p. 11, ln. – p. 12, ln. 15). Shortly thereafter, Mr. Wattles observed stained concrete caused by dripping of "material" [sulfate dust] from the structures [i.e. trusses] above. (*Id.*; p. 40, ln. 6-25; p. 41, ln. 16 to p. 42, ln. 9). Mr. Wattles testified that it was at this time, i.e. late 2010 or early 2011, that Plaintiff started "looking at the environmental conditions" as the cause of damage to the building. (*Id.*; p. 40, ln. 1-21). Mr. Wattles testified that Plaintiff is seeking to recover the exact same property damages in this matter against the Defendant insurers that it is seeking to recover from Exide in Pierce County Superior Court. (*Id.*; p. 61, ln. 9-17).

Plaintiff hired Environmental Management Services, LLC ("EMS") to complete a site reconnaissance and environmental assessment to identify the environmental impact to the structure and property as a result of Exide's operations. (*See* Pujolar Dec., ¶9). On **January 20, 2011**, EMS conducted a site inspection. EMS produced a report to Plaintiff, dated **January 28, 2011**, reporting the following regarding the building trusses:

> EMS personnel used a scissor lift, provided by the Wattles Company, to inspect several trusses and joints. **There was a burned/charred appearance (Photo 01) to all of the horizontal truss surfaces**. The trusses at the far northeast (Figure 1) appeared to be more severely charred, with a curled and peeled surface. The majority of the beams had a blackened surface which was sticky to the touch. **All of the metal truss plates and rivets exhibited extreme corrosion** (Photo 04). **White oxidized material was present at a depth of 0.25 to 0.50 inches on all of metal surfaces inspected**. This included pipes,

DEFENDANT VERLAN FIRE INSURANCE COMPANY'S MOTION FOR
SUMMARY JUDGMENT DISMISSAL RE: PLAINTIFF'S CLAIMS – PAGE 16
CAUSE NO. 3:14-cv-05097-RBL

1118185 / 520.0005

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
901 FIFTH AVENUE • SUITE 1400
SEATTLE, WASHINGTON 98164-1039
(206) 689-8500 • (206) 689-8501 FAX

1    heating ducts, and structural supports as well as the truss joints and plates.  The
2    oxidation of the metal and the charring of the wood appeared to decrease as the
     distance from the north wall increased.  (*Id.*)  (Emphasis added).

3         EMS also observed extreme staining and pitting of the cement floors and walls of the

4    building.  (*Id.*)  The floor staining and pitting was spread throughout the structure and appeared

5    at regular intervals under the truss joints.  (*Id.*) EMS concluded and advised Wattles that "the

6    low pH levels found on surfaces and duct systems at the site constitute a potential problem for

7    the structural integrity of the building.   It is highly probable that the cement has been

8    impregnated with lead and the ground beneath the cement and outside the building may be

9    impacted." (*Id.*)

10        Thereafter, on March 1, 2011, April 8, 2011, and April 25, 2011, Plaintiff's counsel at

11   the time sent letters to Exide demanding Exide to take action to "mitigate Wattles' ongoing

12   damages" related to the hazardous waste, contamination, and structural integrity issues arising

13   out of Exide's activities.  (*See* Pujolar Dec., ¶10, ¶11, and ¶12).   Moreover, on April 25, 2011,

14   Plaintiff's counsel provided Exide a copy of Plaintiff's draft complaint alleging the following:

- 3.8    In or around January 2011, Wattles retained Environmental Management
  Services ("EMS") to complete a limited environmental review and assessment
  of the environmental conditions at the Vacated Premises and associated property
  as a result of Exide's operations.  EMS's investigation verified the presence of a
  number of environmental issues of concern, including high concentrations of
  lead, chromium, and hexavalent chromium, and concluded that that presence of
  these hazardous substances constitute a health and safety issue. …

- 3.9    EMS also verified low pH levels on the surface of overhead beams, the
  metal surfaces of the truss structures, and duct systems.  EMS concluded that the
  low pH levels constitute a potential problem for the structural integrity of the
  warehouse building.

- 3.12   Despite demand, Exide has refused to investigate, address, or remediate
  issues related to the structural integrity of the warehouse building.

DEFENDANT VERLAN FIRE INSURANCE COMPANY'S MOTION FOR
SUMMARY JUDGMENT DISMISSAL RE: PLAINTIFF'S CLAIMS – PAGE 17
CAUSE NO. 3:14-cv-05097-RBL

1118185 / 520.0005

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
901 FIFTH AVENUE • SUITE 1400
SEATTLE, WASHINGTON  98164-1039
(206) 689-8500 • (206) 689-8501 FAX

- 3.13    Despite demand, Exide has refused to indemnify and reimburse Wattles for costs Wattles has incurred to investigate and address remediation issues related to environmental concerns and structural integrity of the Vacated Premises.

- 3.14    Because of the unremedied environmental, health and safety, and structural concerns resulting from Exide's tenancy of the Vacated Premises, Wattles is unable to market the Vacated Premises and associated property for rent, lease, or sale.

(*See* Pujolar Dec., ¶12).

The draft complaint attached to Plaintiff's April 25, 2011 letter to Exide includes the same allegations as Plaintiff's complaint ultimately filed against Exide in Pierce County Superior Court on March 28, 2013.    (*See* Pujolar Dec., ¶15).    The following time-line unequivocally establishes that Plaintiff was on notice and knew that Exide's former operations were causing damage to the Plaintiff's property prior to purchasing Verlan's policy, effective November 1, 2011:

| Date | Document/Evidence |
|---|---|
| August 2, 1999 | Lease Addendum acknowledging general and specific damage to the building from Exide's operations.  (*See* Pujolar Dec., ¶5). |
| January 28, 2011 | EMS report identifying building damage, including, but not limited to, burned/charred trusses, extremely corroded metal truss plates and rivets, and stained and pitted concrete.  (*See* Pujolar Dec., ¶9). |
| March 1, 2011 | Letter from Plaintiff's counsel to Exide re: damages from Exide's operations.  (*See* Pujolar Dec., ¶10). |
| April 8, 2011 | Letter from Plaintiff's counsel to Exide re: damages from Exide's operations.  (*See* Pujolar Dec., ¶11). |
| April 25, 2011 | Letter from Plaintiff's counsel to Exide re: Plaintiff's damages related to hazardous waste, contamination, and structural issues arising out of Exide's former activities.  **Plaintiff's draft complaint attached to letter.**  (*See* Pujolar Dec., ¶12). |
| | |
| **November 1, 2011** | **Inception of Verlan's policy no. M00275711, effective November 1, 2011 to November 1, 2012** |

DEFENDANT VERLAN FIRE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT DISMISSAL RE: PLAINTIFF'S CLAIMS – PAGE 18
CAUSE NO. 3:14-cv-05097-RBL

1118185 / 520.0005

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
901 FIFTH AVENUE • SUITE 1400
SEATTLE, WASHINGTON 98164-1039
(206) 689-8500 • (206) 689-8501 FAX

1       Plaintiff knew in January 2011 [if not earlier] that Exide's former operations had

2   resulted in damages related to the hazardous waste, contamination, and structural integrity

3   issues arising out of Exide's activities.  In January 2011 [if not earlier], Plaintiff had knowledge

4   and was aware of damages allegedly affecting the structural integrity of the building, including

5   burned/charred horizontal truss surfaces, *extremely* corroded metal truss plates and rivets, and

6   the presence of white oxidized material on all of metal surfaces inspected by EMS.   Plaintiff

7   was also unquestionably aware of stained and pitted concrete floors and walls.  Plaintiff was

8   actively seeking recovery from Exide for damages caused by Exide's operations well in

9   advance of the effective date of Verlan's policy, i.e. November 1, 2011.

10       Verlan is not required to provide coverage for damages known by Plaintiff prior to

11   procuring insurance from Verlan.  Plaintiff clearly had notice of the alleged loss and damages

12   resulting from Exide's former operation and activities for which Plaintiff now seeks recovery

13   from the defendant insurers prior the inception of Verlan's November 1, 2011 policy period.

14   Plaintiff's claims against Verlan should be dismissed.

## VI.   CONCLUSION

16       Based upon the foregoing, Verlan respectfully requests the Court to enter an order

17   dismissing Plaintiff's claims against Verlan in total with prejudice.

18       DATED this 18th day of June, 2014.

19       FORSBERG & UMLAUF, P.S.

20

21   By: _____

    Martin J. Pujolar, WSBA #36049

22       Carl E. Forsberg, WSBA #17025

    Attorneys for Verlan Fire Insurance Company

23

DEFENDANT VERLAN FIRE INSURANCE COMPANY'S MOTION FOR
SUMMARY JUDGMENT DISMISSAL RE: PLAINTIFF'S CLAIMS – PAGE 19
CAUSE NO. 3:14-cv-05097-RBL

1118185 / 520.0005

FORSBERG & UMLAUF, P.S.
ATTORNEYS AT LAW
901 FIFTH AVENUE • SUITE 1400
SEATTLE, WASHINGTON 98164-1039
(206) 689-8500 • (206) 689-8501 FAX

1

2

**CERTIFICATE OF SERVICE**

3

The undersigned certifies under the penalty of perjury under the laws of the State of

4

Washington that I am now and at all times herein mentioned, a citizen of the United States, a

5

resident of the State of Washington, over the age of eighteen years, not a party to or interested

6

in the above-entitled action, and competent to be a witness herein.

7

On the date given below I caused to be served the foregoing DEFENDANT VERLAN

8

FIRE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT DISMISSAL

9

RE: PLAINTIFF'S CLAIMS on the following individuals in the manner indicated:

10

11   Ms. Devon M. Thurtle Anderson                   Mr. Curt H. Feig
     Mr. Brent Hardy                                 Mr. Thomas J. Braun
12   Heffernan Law Firm, PLLC                        Nicoll Black & Feig, PLLC
     1201 Market Street                              1325 Fourth Avenue, Suite 1650
13   Kirkland, WA  98033                             Seattle, WA  98101

14   (X) Via ECF                                     (X) Via ECF

15   Mr. Geoffrey J.M. Bridgman                      Ms. Stephania Denton
     Tracy N. Grant                                  Mr. David M. Schoeggl
16   Odgen Murphy Wallace, P.L.L.C.                  Lane Powell, P.C.
     901 Fifth Avenue, Suite 3500                    1420 Fifth Avenue, Suite 4200
17   Seattle, WA  98164                              Seattle, WA  98111

18   (X) Via ECF                                     (X) Via ECF

19   James Thomas Derrig                             Mr. Alfred E. Donohue
     James T. Derrig Attorney at Law, PLLC           Wilson Smith Cochran Dickerson
20   14419 Greenwood Avenue N. Suite A-372           901 Fifth Avenue, Suite 1700
     Seattle, WA  98133                              Seattle, WA  98164

21   (X) Via ECF                                     (X) Via ECF

22

23

DEFENDANT VERLAN FIRE INSURANCE COMPANY'S MOTION FOR
SUMMARY JUDGMENT DISMISSAL RE: PLAINTIFF'S CLAIMS – PAGE 20
CAUSE NO. 3:14-cv-05097-RBL

1118185 / 520.0005

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
901 FIFTH AVENUE • SUITE 1400
SEATTLE, WASHINGTON  98164-1039
(206) 689-8500 • (206) 689-8501 FAX

1  | Mr. Joseph D. Hampton
   | Mr. Daniel L. Syhre

2  | Betts Patterson Mines
   | 701 Pike Street, Suite 1400

3  | Seattle, WA 98101

4  | (X) Via ECF

5

6  | Mr. Paul F. Cane
   | Mr. Russell C. Love

7  | Thorsrud Cane & Paulich
   | 1325 Fourth Avenue, Suite 1300
   | Seattle, WA 98101

8  | (X) Via ECF

9

10 | Mr. Daniel R. Bentson
   | Bullivant Houser Bailey, PC

11 | 1700 Seventh Avenue, Suite 1810
   | Seattle, WA 98101

12 | (X) Via ECF

Mr. Eliot M. Harris
Mr. Robert A. Meyers
Sedgwick LLP
520 Pike Tower
520 Pike Street, Suite 2200
Seattle, WA 98101

(X) Via ECF

Mr. Scott M. Stickney
Wilson Smith Cochran Dickerson
901 Fifth Avenue, Suite 1700
Seattle, WA 98164-2050

(X) Via ECF

13

14  **SIGNED** this __19th__ day of June, 2014, at Seattle, Washington.

15

16  _VM Waters_
    Veronica M. Waters

17

18

19

20

21

22

23

DEFENDANT VERLAN FIRE INSURANCE COMPANY'S MOTION FOR
SUMMARY JUDGMENT DISMISSAL RE: PLAINTIFF'S CLAIMS – PAGE 21
CAUSE NO. 3:14-cv-05097-RBL

1118185 / 520.0005

FORSBERG & UMLAUF, P.S.
ATTORNEYS AT LAW
901 FIFTH AVENUE • SUITE 1400
SEATTLE, WASHINGTON  98164-1039
(206) 689-8500 • (206) 689-8501 FAX