The Honorable Ronald B. Leighton

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA

9

| THE WATTLES COMPANY, a Washington corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SCOTTSDALE INSURANCE COMPANY, an Arizona corporation, et al.,<br><br>Defendants. | No. 3:14-cv-05097-RBL<br><br>**WESTCHESTER DEFENDANTS' MOTION FOR SUMMARY JUDGMENT DISMISSAL OF CONTRACT-BASED CLAIMS DUE TO WATTLES' FAILURE TO FILE SUIT WITHIN ONE-YEAR SUIT-LIMITATION PERIOD**<br><br>**NOTE ON MOTION CALENDAR:** SEPTMBER 5, 2014 |
| --- | --- |

10
11
12
13
14
15
16
17

## I. RELIEF REQUESTED

18
19

COME NOW Defendants, Westchester Fire Insurance Company and Westchester

20

Surplus Lines Insurance Company f/k/a Industrial Insurance Company of Hawaii, Ltd.

21

(collectively "Westchester"), by and through their attorneys of record, Wilson Smith Cochran

22

Dickerson, and hereby move for partial Summary Judgment pursuant to Fed. R. Civ. P. 56.

23

All contract-based claims asserted by Plaintiff The Wattles Company ("Wattles") against

24

Westchester must be dismissed because Wattles failed to file suit within one year after the

25

inception of the loss that Wattles' asserts is covered by the property insurance policies issued

26

by Westchester.

WESTCHESTER DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT DISMISSAL OF CONTRACT-
BASED CLAIMS DUE TO WATTLES' FAILURE TO FILE
SUIT WITHIN ONE YEAR SUIT LIMITATION PERIOD
(Cause No. 3:14-cv-05097-RBL) – 1

 WILSON SMITH COCHRAN DICKERSON
901 FIFTH AVENUE, SUITE 1700
SEATTLE, WASHINGTON 98164
TELEPHONE: (206) 623-4100
FAX: (206) 623-9273

## II. <u>STATEMENT OF FACTS</u>

On February 4, 2014, Wattles filed this action against Westchester and several other insurance companies. Each insurer/defendant had issued policies covering a commercial warehouse in Sumner, Washington, that Wattles has owned since the mid-1980s. Wattles sought recovery from the insurers for damages a former tenant–GWB Corporation, now known as Exide Technologies ("Exide")–caused to the warehouse by its commercial battery filing operations over the course of decades. Wattles contends Exide's operations caused sulfuric acid to be released into the air inside the warehouse, which caused damage to the structure of the warehouse, including collapse due to weakened roof trusses, and that this damage is covered under the Westchester policies, as well as various other defendant insurers' policies. Because the undisputed facts establish that the acid-impacted conditions that allegedly caused the claimed damage would have to have begun decades ago to be covered under Westchester's policies (which were in effect from 1992-1995), and because the conditions were revealed to Wattles at least two years before this lawsuit was filed, Wattles' contractual claims are untimely and must be dismissed.

### A.   <u>Wattles' Use of the Property–Lease to Exide Technologies</u>

The property that is the subject of this action is owned by Wattles and located in an industrial/warehousing area. (*See* DKT. #3). Lead-acid battery operations, including battery assembly, filling, and charging, were conducted at the property over a 28-year period, from 1981 through 2009. (*Id.*).

In 1981, Wattles leased the subject warehouse, located at 1901-2005 Fryer Avenue, Sumner, Washington ("the Property"), to GWB Corporation, n/k/a Exide Technologies ("Exide"), from October 1, 1981, to September 30, 1986. (*See* **Exh. 1** to Declaration of Scott M. Stickney ("Stickney Decl."), submitted herewith.) Under the terms of the lease, GWB used the Property for "marketing, processing, and storage of battery products and related activities." (*Id.*) On August 11, 1986, Wattles renewed the lease with GWB's parent

WESTCHESTER DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT DISMISSAL OF CONTRACT-
BASED CLAIMS DUE TO WATTLES' FAILURE TO FILE
SUIT WITHIN ONE YEAR SUIT LIMITATION PERIOD
(Cause No. 3:14-cv-05097-RBL) – 2

WILSON
SMITH
COCHRAN
DICKERSON

901 FIFTH AVENUE, SUITE 1700
SEATTLE, WASHINGTON 98164
TELEPHONE: (206) 623-4100
FAX: (206) 623-9273

1  company, General Battery Corporation, for the period October 1, 1986, to September 30,

2  1996. (*See* **Exh. 2** to Stickney Decl.)  On August 2, 1999, Wattles entered into a lease

3  agreement with Exide for lease term of October 1, 1999, to September 30, 2009. (*See* **Exh. 3**

4  to Stickney Decl.)  The leased Property remained the same, but the lease included the address

5  "1911-2001 Fryar Ave." (*Id.*)

6       On August 2, 1999, an Addendum was added to the 1999-2009 lease, stating in part:

7
8      Landlord and Tenant agree that Tenant has made modifications and additions
   to the Premises under the prior Leases...and that the Premises have
   experienced extraordinary (i.e. beyond normal) wear and tear during the
9  period of the prior Leases by virtue of the Tenant's activities on the
   Premises...
10

11                        * * *

12      Tenant acknowledges that **extraordinary wear and tear has occurred to the**
   **building in general and specifically to the floor in the area of the battery**
13  **formation an acid farm area...**

14  (**Exh. 4** to Stickney Decl.)

15       Throughout the period 1981 to 2009, Exide used the Property for "marketing,

16  processing, distribution, and storage of lead-acid batteries, battery products and related

17  activities." (*See* lease exhibits previously referenced.)  Exide ceased its battery "formation"

18  operations in 2009 and was merely storing batteries at the location thereafter. (*See* **Exh. 5** to

19  Stickney Decl.)

20  **B.**     **Examination Under Oath of Craig B. Wattles**

21       On January 24, 2014, an attorney representing Fireman's Fund Insurance Company

22  conducted an Examination Under Oath ("EUO") of Wattles' President, Craig B. Wattles, with

23  regard to the alleged loss and damage at the Property for which claims have been made to the

24  defendant insurers in this lawsuit.  During his EUO, Mr. Wattles asserted that the Property's

25  entire wood truss and roof system, as well as areas of concrete, were damaged by the release

26  of acid from Exide's former battery formation operations and that the acid was "deposited



WILSON
SMITH
COCHRAN
DICKERSON

901 FIFTH AVENUE, SUITE 1700
SEATTLE, WASHINGTON 98164
TELEPHONE: (206) 623-4100
FAX: (206) 623-9273

1   throughout all surfaces of the building". (*See* **Exh. 6** to Stickney Decl., P. 34, Ln. 4-21 & P.

2   43, Ln. 8-24.) The alleged property damage for which Wattles seeks coverage was caused by

3   Exide's activities. (*Id.*, P. 44, Ln. 11-15.)

4       Mr. Wattles testified he observed concrete damage from Exide's operations in 1999, if

5   not earlier. (*Id.*, P. 50, Ln. 7-12.) He admitted he was aware of concrete damage from Exide's

6   operations and the release of sulfuric acid in 1999, and he expected the concrete damage to

7   continue over the life of the lease with Exide. (*Id.*, P. 56, Ln. 5-8.) This is the same type of

8   concrete damage for which Wattles seeks recovery in this lawsuit. (*Id.*, P. 53, Ln. 8-13.)

9       Mr. Wattles confirmed that Exide moved out of the premises in 2009. (*Id.*, P. 41, Ln.

10  1-2.) He also testified he became aware of "problems" at the property in late 2010 or early

11  2011, including truss breaks and staining of the concrete floors caused by dripping of

12  "material" from the above-ground structures.   According to Mr. Wattles, there was a

13  "significant" main truss break in 2010, which allegedly affected the strength of the building.

14  (*Id.*, P. 38, Ln. 7-22.) He reported the truss break to Wattles' property insurer at the time,

15  Fireman's Fund/Allianz. (*Id.*, P. 11, Ln. 10 to P. 12, Ln. 15.) Shortly thereafter, Mr. Wattles

16  observed the stained concrete from "material" dripping from above:

17      A.   ...Exide, when they moved out, they replaced all of the floors in the
18           formation area. So, there's a brand new concrete floor. And we were
             walking the building, and we noticed a grid pattern of staining on the
19           concrete. ... And then we looked up and noticed that it was directly
             underneath the fire lines and underneath the truss lines. Due to the
20           coloration of it, we were concerned.

21           Exide brought in Phillips Service to do a complete environmental
22           cleaning of the building when they moved out. To see staining after an
             environmental company has cleaned the building was concerning. So,
23           then we brought in an environmental company to test it. And it was a
             problem. It showed that we had a problem.
24
        Q.   Let me just clarify a couple of things. This grid pattern that you were
25           noticing in the concrete, **this was happening in 2010, is that right**?

26

WESTCHESTER DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT DISMISSAL OF CONTRACT-
BASED CLAIMS DUE TO WATTLES' FAILURE TO FILE
SUIT WITHIN ONE YEAR SUIT LIMITATION PERIOD
(Cause No. 3:14-cv-05097-RBL) – 4

WILSON
SMITH
COCHRAN
DICKERSON

901 FIFTH AVENUE, SUITE 1700
SEATTLE, WASHINGTON 98164
TELEPHONE: (206) 623-4100
FAX: (206) 623-9273

A.   **That's when we first noticed it.**

(*Id.,* P. 40, Ln. 25.) (Emphasis added.)

Mr. Wattles further testified that water condensed on the trusses to the point where it dripped to the floor, resulting in the grid patterns on the concrete below noticed in 2010:

> A.   …the building is not heated, but the [prior] manufacturing [by Exide] provided enough heat.  The sprinkler systems are … wet systems, meaning they contain water all year round…
>
> Wet systems are subject to freezing.  We had a cold snap, so we brought in kerosene heaters to heat the space, make sure we didn't freeze.  Those – since you're – the combustion is in the building, you put out a lot of water into the air, and the water condensed.  Water condensed on the upper structure to the point where in dripped.  If we hadn't done that, we might not have noticed it.
>
> Q.   So you think that those drips were actually what was causing the grid pattern on the concrete?
>
> A.   The grid – **the water was pulling material–dripping the material that was already up there down.**

(*Id.,* P. 41, Ln. 18 to P. 42, Ln. 9.) (Emphasis added.)

In the same timeframe (later 2010/early 2011), Wattles began "looking at the "environmental conditions" as the cause of the damage to the building.  (*Id.,* P. 40, Ln. 1-21.)

## C.   **Wattles' Investigation of Building Conditions and Its Claims Against Exide Mirror Those Made Against the Defendant Insurers**

Wattles now makes claim, to Westchester and the other defendant insurers, for the very same property damage it earlier sought to recover from Exide in a separate lawsuit pending in Pierce County Superior Court.

### 1.   **January 2011 -** Observations by Environmental Management Services

In or about January 2011, Wattles hired Environmental Management Services, LLC ("EMS") to perform a site investigation and environmental assessment of the Property.  EMS

WESTCHESTER DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT DISMISSAL OF CONTRACT-
BASED CLAIMS DUE TO WATTLES' FAILURE TO FILE
SUIT WITHIN ONE YEAR SUIT LIMITATION PERIOD
(Cause No. 3:14-cv-05097-RBL) – 5



WILSON
SMITH
COCHRAN
DICKERSON

901 FIFTH AVENUE, SUITE 1700
SEATTLE, WASHINGTON 98164
TELEPHONE: (206) 623-4100
FAX: (206) 623-9273

prepared a report for Wattles dated January 28, 2011, containing its findings and opinions. (*See* **Exh.** 7 to Stickney Decl.) EMS' prime objective was to review the environmental conditions related to Exide's former battery manufacturing operations in order to identify the environmental impact to the Property. (*Id.,* P. 1, ¶2.)

On **January 20, 2011,** EMS met onsite with Wattles' representative Taylor Balduff as part of its site investigation. (*Id.,* P. 1, ¶4.) EMS used a scissor lift to inspect the building trusses (*Id.,* P. 2, ¶1)[1] and also inspected staining on the concrete floor and concrete support posts (*Id.,* P. 2, ¶2). EMS observed extreme staining and pitting of the cement floor and walls. (*Id.*) The floor staining and pitting was spread throughout the structure and appeared at regular intervals under the truss joints. (*Id.*)

Inspection of several trusses and joints by EMS revealed:

> **a burned/charred appearance to all of the horizontal truss surfaces.** The trusses at the far northeast appeared to be more severely charred, with a curled and peeled surface. The majority of the beams had a blackened surface which was sticky to the touch. All of the metal truss plates and rivets exhibited extreme corrosion. White oxidized material was present at a depth of approximately 0.25 to 0.50 inches on all of [the] metal surfaces inspected. This includes pipes, heating ducts, and structural supports as well as the truss joints and plates.

(*Id.,* P. 2, ¶3.) (Emphasis added.)

EMS reported to Wattles that it had found "low pH levels on surfaces of overhead beams and the metal surfaces of truss structures" and that **"the low pH levels found on surfaces and duct systems at the site constitute a potential problem for the structural integrity of the building."** (*Id.,* P. 3, ¶3-4.) EMS advised Wattles that it was "unable to

---

[1] It is apparent from EMS' report that EMS had been on site several weeks earlier than January 20, 2010. Figure No. 2 to Attachment A of the EMS report contains photographs of "residue" and corrosion on the trusses, truss joints, truss plates, and piping. (Those photographs are dated January 4, 2010, but for purposes of this motion, it is assumed that 2010 was a typo and should be 2011.)

WESTCHESTER DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT DISMISSAL OF CONTRACT-
BASED CLAIMS DUE TO WATTLES' FAILURE TO FILE
SUIT WITHIN ONE YEAR SUIT LIMITATION PERIOD
(Cause No. 3:14-cv-05097-RBL) – 6

WILSON
SMITH
COCHRAN
DICKERSON

901 FIFTH AVENUE, SUITE 1700
SEATTLE, WASHINGTON 98164
TELEPHONE: (206) 623-4100
FAX: (206) 623-9273

determine the depth of penetration of the wood beams in this initial assessment.   Core

sampling of both the wood beams and cement is recommended." (*Id.,* P. 3, ¶4.)   EMS

recommended that "a structural engineer complete an assessment of the building to certify the

structural integrity of the building components." (*Id.,* P. 4, ¶2.)[2].

2.   **March 2011** - Wattles' Demand to Exide

On or about March 1, 2011, Wattles' counsel at the time, Kurt Peterson of the

Cascadia Law Group, sent a letter to Exide demanding action to "mitigate Wattles' ongoing

damages."   The letter provides, in part:

> In Wattles' effort to release the space, Wattles discovered that the vacated
> space continues to present significant environmental, health, and safety
> concerns as a result of Exide's activities at the Premises and remaining
> contamination.   Wattles engaged Environmental Management Services, LLC
> to perform an environmental assessment of the Premises, a copy of which is
> enclosed.   Wattles has been compelled to remove the property from the
> market, and it remains unleasable and unmarketable in its present condition.
> **Wattles has been and continues to be significantly damaged.**

(**Exh. 9** to Stickney Decl.) (Emphasis added.)   Mr. Peterson's letter further demanded that

Exide "promptly engage a structural engineer to assess the structural integrity of the

Premises." (*Id.,* P. 3, ¶2.)

On April 8, 2011, Wattles' counsel, Joseph Rehberger, also of Cascadia Law Group,

sent Exide a follow-up letter demanding Exide take action to resolve Wattles' ongoing

damages from Exide's former operations.   (*See* **Exh. 10** to Stickney Decl.)

On April 25, 2011, Mr. Rehberger sent Exide a "Renewed Notice of Default and

Demand" which reiterated that Wattles "continues to be damaged by and suffer losses directly

---

[2] For reasons that are not yet entirely clear, Wattles had retained a structural engineering firm, Sitts and Hill Engineers, Inc., to perform an inspection of the building's roof on January 10, 2011, the same timeframe in which EMS conducted its inspection. (*See* **Exh. 8** (at p. 3) to Stickney Decl.)

WESTCHESTER DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT DISMISSAL OF CONTRACT-
BASED CLAIMS DUE TO WATTLES' FAILURE TO FILE
SUIT WITHIN ONE YEAR SUIT LIMITATION PERIOD
(Cause No. 3:14-cv-05097-RBL) – 7

WILSON
SMITH
COCHRAN
DICKERSON

901 FIFTH AVENUE, SUITE 1700
SEATTLE, WASHINGTON 98164
TELEPHONE: (206) 623-4100
FAX: (206) 623-9273

resulting from the residual contamination left at the [warehouse] following Exide's vacation of the same." (*See* **Exh. 11** to Stickney Decl.) Wattles' counsel further stated Wattles continued to incur damages related to the hazardous waste, contamination, and structural integrity issues arising out of Exide's activities. (*Id.*) A draft Complaint included with the April 25, 2011, letter alleged in part:

- 3.8 In or around January 2011, Wattles retained Environmental Management Services ("EMS") to complete a limited environmental review and assessment of the environmental conditions at the Vacated Premises and associated property as a result of Exide's operations. EMS's investigation verified the presence of a number of environmental issues of concern, including high concentrations of lead, chromium, and hexavalent chromium, and concluded that the presence of these hazardous substances constitute a health and safety issue. ... (Emphasis added).

- 3.9 EMS also verified low pH levels on the surface of overhead beams, the metal surfaces of truss structures, and duct systems. EMS concluded that the low pH levels constitute a potential problem for the structural integrity of the warehouse building.

\* \* \*

- 3.12 Despite demand, Exide has refused to investigate, address, or remediate issues related to the structural integrity of the warehouse building.

- 3.13 Despite demand, Exide has refused to indemnify and reimburse Wattles for costs Wattles has incurred to investigate and address remediation issues related to the environmental concerns and structural integrity of the Vacated Premises.

- 3.14 Because of the unremedied environmental, health and safety, and structural concerns resulting from Exide's tenancy of the Vacated Premises, Wattles is unable to market the Vacated Premises and associated property for rent, lease, or sale.

(*Id.*)



WILSON
SMITH
COCHRAN
DICKERSON

901 FIFTH AVENUE, SUITE 1700
SEATTLE, WASHINGTON 98164
TELEPHONE: (206) 623-4100
FAX: (206) 623-9273

3.     **August 2011** - Observations by Wiss Janney Elstner

According to an August 24, 2011, proposal for site investigation services prepared by the structural engineering firm of Wiss Janney Elstner ("WJE") (**Exh. 12** to Stickney Decl.) and provided to Wattles' prime consultants in this matter, Farallon Consulting, LLC ("Farallon")[3], WJE had been out to the Property as early as August 2, 2011, for a preliminary site visit, together with representatives of both Farallon and Wattles[4].  Among the comments found in WJE's proposal is the following:

> From our discussions we understand that **a highly corrosive environment likely existed during the years of battery manufacturing which may have affected the structural integrity of the roof framing.**  There are currently other chemical remediation clean up and repair efforts completed and/or underway at the building. We understand the overall goal of your project is to restore the building to a condition that is acceptable for occupancy by new tenants.  **From our site visit we observed distress conditions of the wood roof framing** that primarily include apparent charring and wood member fracture. Based on the **observable wood framing distress** and our discussions we understand that the owner would like WJE to:
>
> 1.  Evaluate the current condition of the northern half of the warehouse roof to determine the extent and magnitude of the observed distress conditions[.]

(**Exh. 12** to Stickney Decl.) (Emphasis added.)

4.     Wattles' Earlier Allegations Against Exide Mirror Claims to Insurers

Craig Wattles testified during his EUO with Fireman's Fund that Wattles seeks to recover the exact same property damage in its present claims to the defendant insurers (including Westchester) that it is seeking to recover from Exide.  (*See* **Exh. 6** to Stickney Declaration, P. 61, Ln. 11-17.)  Wattles' allegations in the draft Complaint sent to Exide in

---

[3] The WJE report was provided by Farallon to Wattles counsel Kurt Peterson along with an investigation proposal letter dated August 25, 2011. (**Exh. 13** to Stickney Decl.)
[4] Some 17 months later, Farallon prepared a comprehensive Site Investigation Report dated February 19, 2013. Included in the Farallon Report was a WJE Assessment offering opinions on the structural integrity of roof trusses impacted by sulfuric acid from Exide's operations. Oddly, WJE's Assessment discusses site visits in July 2012, but completely fails to mention that WJE personnel visited the site in mid-2011, nearly a year earlier.

WESTCHESTER DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT DISMISSAL OF CONTRACT-
BASED CLAIMS DUE TO WATTLES' FAILURE TO FILE
SUIT WITHIN ONE YEAR SUIT LIMITATION PERIOD
(Cause No. 3:14-cv-05097-RBL) – 9

WILSON
SMITH
COCHRAN
DICKERSON

901 FIFTH AVENUE, SUITE 1700
SEATTLE, WASHINGTON 98164
TELEPHONE: (206) 623-4100
FAX: (206) 623-9273

1  April 2011 were formalized when Wattles filed suit against Exide in Pierce County Superior

2  Court, nearly two years later, on March 28, 2013.  (*See* **Exh. 14** to Stickney Decl.)

3      When Exide filed for Chapter 13 bankruptcy in Delaware in June 2013, Wattles'

4  Pierce County action against Exide was automatically stayed under the Bankruptcy Code.  On

5  October 24, 2013, Wattles moved the Bankruptcy Court for relief from the automatic stay to

6  the extent of Exide's commercial liability insurance[5].  (*See* **Exh. 15** to Stickney Decl.)  In that

7  motion, Wattles informed the court as follows:

> In or around January 2011, Wattles retained Environmental Management
> Service ("EMS") to complete a limited environmental review and assessment
> of the environmental conditions at the Vacated Premises and associated
> property as a result of Exide's operations.  EMS's investigation verified the
> presence of a number of environmental issues of concern. . . . EMS also
> verified low pH levels on the surface of overhead beams, the metal surfaces of
> truss structures, and duct systems.  EMS concluded that the low pH levels
> have compromised and continue to threaten the structural integrity of the
> warehouse building.

14  (*Id.*, P. 6.)  This statement is consistent with the allegations of the Wattles draft Complaint,

15  which Wattles' counsel sent Exide's counsel in March/April 2011.

16  **D.      The Westchester Policies and the One-Year Suit Limitation**

17      Westchester insured the Property under three successive policies:

18  
19  - Policy No. JA 912-4039 - Policy Period 11/01/1992-11/01/1993
    - Policy No. JA 913-2294 - Policy Period 11/01/1993-11/01/1994
20  - Policy No. FPS 376793 - Policy Period 11/01/1994-11/01/1995

21      The existence and terms of these policies are entirely based upon copies of the policies,

22  and/or copies of renewal correspondence between Wattle's broker and Westchester

23  representatives, which Wattles produced in connection with this claim.  Despite diligent and

24  extensive efforts to reconstruct the policies at issue, Westchester has been unable to confirm

25  

26  ---
[5] Wattles filed its formal claim as a creditor in the Exide bankruptcy case on or about October 30, 2013.  To the best of Westchester's knowledge, Wattles' request for relief from the automatic stay is still pending.

WESTCHESTER DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT DISMISSAL OF CONTRACT-
BASED CLAIMS DUE TO WATTLES' FAILURE TO FILE
SUIT WITHIN ONE YEAR SUIT LIMITATION PERIOD
(Cause No. 3:14-cv-05097-RBL) – 10

WILSON
SMITH
COCHRAN
DICKERSON

901 FIFTH AVENUE, SUITE 1700
SEATTLE, WASHINGTON 98164
TELEPHONE: (206) 623-4100
FAX: (206) 623-9273

through its records that Wattles was an insured during the alleged period or that Westchester issued the policies Wattles has produced. (*See* accompanying Declaration of James Kelly.) In Washington, an entity seeking insurance coverage bears the burden of proving the material terms of the policy. *See City of Tacoma v. Great Amer. Ins. Co.*, 879 F. Supp. 486 (W.D. Wash. 1995). Nonetheless, Westchester has acknowledged to Wattles that the policy forms and renewal quotes/bids/correspondence it produced control. (*See* **Exh. 16** to Stickney Decl., which includes the terms and conditions of the Westchester policies.)

Consistent with typical property insurance policies, the Westchester policies include Suit-Limitation provisions that limit the time within which Wattles may file suit against Westchester. The applicable language in the policies reads as follows:

> **Suit**   **No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all of the requirements of this policy shall have been complied with, and unless commenced within twelve months next after inception of the loss.**

*See id.* at P. 4, Ln. 157-161.

Wattles did not file suit against Westchester until February 4, 2014, considerably more than a year after any arguable "inception of the loss." Failure to timely file suit is asserted as an Affirmative Defense in Westchester's Answer and Affirmative Defenses (*See* **Docket No. 37**.) The Westchester policies also contain various other potentially applicable conditions and exclusions. Westchester does not waive, and specifically reserves, any and all applicable policy defenses in the event Wattles' suit is determined to be timely.

**E.**   **Wattles' Complaint Allegations**

Wattles' Complaint alleges the Property has sustained direct physical loss or damage from perils covered, and not excluded, by the insurance policies issued by the Defendant

WESTCHESTER DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT DISMISSAL OF CONTRACT-
BASED CLAIMS DUE TO WATTLES' FAILURE TO FILE
SUIT WITHIN ONE YEAR SUIT LIMITATION PERIOD
(Cause No. 3:14-cv-05097-RBL) – 11

WILSON
SMITH
COCHRAN
DICKERSON

901 FIFTH AVENUE, SUITE 1700
SEATTLE, WASHINGTON 98164
TELEPHONE: (206) 623-4100
FAX: (206) 623-9273

insurers, including Westchester. (*See* **Docket No. 3.**)[6]  As noted above, Wattles seeks, through its Complaint, to recover from the Defendant insurers in this action for the exact same property damage it has been seeking to recover from Exide in Pierce County Superior Court.

### III.  ISSUE PRESENTED

Should Wattles' breach of contract claims be dismissed as untimely where:

1)  Wattles' alleges coverage under the 1992-1995 Westchester policies for collapse of the warehouse due to substantial impairment of structural roof members and other damage caused by deterioration over time through exposure to sulfuric acid;

2)  the Westchester policies unambiguously provide that suit for recovery on a claim must be commenced within 12 months after the inception of a loss; and

3)  the deterioration due to sulfuric acid exposure was revealed and known to Wattles by at least January 2011, more than two years before Wattles filed suit against Westchester?

**SHORT ANSWER:  Yes.  Wattles' contract claims are time-barred by the terms of the policy and this result is consistent with *Panorama Village v. Allstate*.**

### IV.  EVIDENCE RELIED UPON

In support of this motion, Westchester relies upon the accompanying Declarations of Scott M. Stickney and James Kelly, all Exhibits thereto, and all records and pleadings on file.

### V.  ARGUMENT AND AUTHORITY

**A.**     **Summary Judgment Standard**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

---

[6] Many of the insurers, including Westchester, had not yet completed their claim investigations by the time the Complaint was filed (and in Westchester's case, still have not inspected the building let alone completed its investigation).  Despite this, Wattles asserts that the insurers have wrongfully refused to properly investigate and acknowledge coverage for the damages, losses, costs, fees, liabilities, and expenses incurred or to be incurred by Wattles with respect to the Property. (*Id.* ¶2.)



WILSON
SMITH
COCHRAN
DICKERSON

901 FIFTH AVENUE, SUITE 1700
SEATTLE, WASHINGTON 98164
TELEPHONE: (206) 623-4100
FAX: (206) 623-9273

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c). The party seeking summary judgment always bears the initial responsibility to inform the court of the basis for its motion and identify those portions of the pleadings or filings it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and—by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file—designate specific facts showing there is a genuine issue for trial. *See id.* at 324.

**B.** **Limitation Clauses are Valid and Enforceable in Washington and the Limitation Period Runs from the Date the Loss Happens**

In *Simms v. Allstate Insurance Company*, 24 Wn. App. 872 (1980), the plaintiff, an insured seeking coverage under his property insurance policy, challenged the precise suit-limitation language which is contained in the Westchester policies: "No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twelve months next after inception of the loss." Per the Washington Court of Appeals:

> *WAC 284-20-010* requires all fire insurance policies to be written on the 1943 New York Standard form, which includes this clause[7]. *RCW 48.18.200* invalidates only those contract limitation clauses that require suit to be brought in less than 1 year [statutory quote and citation omitted].

> In passing on the validity of a similar clause, it was stated in *Hefner v. Great Am. Ins. Co., 126 Wash. 390, 391, 218 P. 206 (1923)*: "We have uniformly held that a clause in such a contract fixing a limitation of the time in which suit is sustainable is a valid one." Further, *Johnson v. Phoenix Assurance Co., 70 Wn.2d 726, 425 P.2d 1(1967)*, held that such a commencement of action clause does not conflict with *RCW 48.18.200*.

*Simms, supra,* 24Wn. App. at 874.

---

[7] The 1943 New York Standard form is commonly referred to as the "165 lines" and is included as part of the Westchester policies.

WESTCHESTER DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT DISMISSAL OF CONTRACT-
BASED CLAIMS DUE TO WATTLES' FAILURE TO FILE
SUIT WITHIN ONE YEAR SUIT LIMITATION PERIOD
(Cause No. 3:14-cv-05097-RBL) – 13

WILSON
SMITH
COCHRAN
DICKERSON

901 FIFTH AVENUE, SUITE 1700
SEATTLE, WASHINGTON 98164
TELEPHONE: (206) 623-4100
FAX: (206) 623-9273

1     The court in *Simms* also rejected the plaintiff's argument that the date the insurance

2 company denied coverage is the "inception of loss" that starts the limitation period running:

> A limitation period covering other risks cannot be less than 1 year from the date the "cause of action accrues." "A cause of action generally accrues for purposes of the commencement of the statute of limitation when a party has a right to apply to court for relief." *Bush v. Safeco Ins. Co. of America, 23 Wn. App. 327, 329, 596 P.2d 1357 (1959).* A property insurance limitation period, however, cannot be less than 1 year from the "date of such loss." The distinction in *RCW 48.18.200(1)(c)* **leads us to conclude that "inception of the loss" means the "date of such loss." Thus, the limitation period began to run on the date the loss occurred.** *See State Ins. Co. v. Meesman,* 2 Wash. 459, 463, 27 P. 77 (1891).

*Id.* at 875. (Emphasis added.)

     Finally, *Simms* held a finding of prejudice is not required before an insurance company may assert an insured's failure to bring suit within the contractual limitation period. *Id.* at 877.

**C.**    **The One Year Suit-Limitation Period in the Westchester Policies Began to Run from the Inception of Wattles' Loss**

    1.    *Loss Must Happen Within Policy Period*

     According to Wattles' Complaint, the primary loss being claimed is the structural instability of the warehouse ("collapse") resulting from roof truss members being exposed to sulfuric acid. As to Westchester, this loss must have incepted during the years it provided coverage on the Property—1992 to 1995—for coverage to apply. Of course, if the loss did incept that many years ago, it is logical that the contractual suit-limitation period also expired many years ago. Westchester anticipates that Wattles will argue that Washington case law on suit limitations is somewhat more complex in situations where the damage is concealed and/or progressive. However, as discussed below, Washington courts have made clear that a policy with language limiting suit to one year "from the inception of the loss" requires that an insured bring any coverage action against the insurer within one year from the time a loss

WILSON
SMITH
COCHRAN
DICKERSON

901 FIFTH AVENUE, SUITE 1700
SEATTLE, WASHINGTON 98164
TELEPHONE: (206) 623-4100
FAX: (206) 623-9273

**begins,** even when such loss is characterized as progressive.  Under that analysis Wattles was required to bring suit in 1996 at the latest.

While the Westchester policies did include coverage for collapse from "hidden decay,"[8] such collapse would have to have happened within the policy period for coverage to attach.  The issues regarding applicability of this coverage to the claim made by Wattles are not directly at play in this Motion because the suit-limitation bars the Court's consideration of Wattles' coverage claims.  Nonetheless, Westchester anticipates that Wattles will attempt to utilize the "collapse caused by hidden decay" provision to argue that the time limit for filing suit has not expired.  As explained below, under the circumstances presented here, such an argument fails.

    2.    *Panorama Village*

As here, the case of *Panorama Village Condominium Owners Association Board of Directors v. Allstate Insurance Co.,* 144 Wn.2d 130, 140-41, 26 P.3d 910 (2001), dealt with questions of coverage for collapse due to "hidden decay."  *Panorama* involved a condominium complex with a long history of maintenance problems.  In May 1996, an investigator was unable to determine the presence of hidden decay.  He then removed some siding to inspect the structural support system and determined decay had occurred and the structure was at risk of collapse due to dry rot.  The claim was submitted in July 1996.  After the insurer denied the claim, the insured filed suit in August 1996.  The Washington Court of Appeals reversed the trial court's summary judgment in favor of the insured and found the policy's suit-limitation provision began to run when the insured knew or reasonably should

---

[8] "This Policy insures against the risk of direct physical loss involving collapse of a building or any part of a building caused only by . . . hidden decay[.]" (**Exh. 16** to Stickney Declaration at P. 15, Section II. *Additional Coverage, Collapse.*)

WILSON
SMITH
COCHRAN
DICKERSON

901 FIFTH AVENUE, SUITE 1700
SEATTLE, WASHINGTON 98164
TELEPHONE: (206) 623-4100
FAX: (206) 623-9273

1  have known that the loss was occurring.  *See Panorama Vill. Condo. Owners Ass'n. v.*

2  *Allstate Ins. Co.,* 99 Wn. App 271, 280-82 (2000), *rev'd* 144 Wn.2d 130, 26 P.3d 910 (2001).

3  The Washington Supreme Court, however, reversed the Court of Appeals, observing that

4  "hidden", as used in the policy, was ambiguous and stating that if the insurer "intends

5  'hidden' to mean 'unknown' it must say so." *Panorama,* 144 Wn.2d at 141.  The *Panorama*

6  Court construed "hidden" to mean "concealed" or "out of sight." *Id.*

7

8       But the suit-limitation provision in *Panorama* differed significantly from the

9  Westchester suit-limitation provisions.  The *Panorama* language permitted only suits

10 "commenced within one year after a loss occurs." The Westchester language requires that suit

11 be brought within "twelve months next after the inception of the loss." The *Panorama* court

12 explicitly distinguished the phrase "after a loss occurs" from the phrase "after the inception of

13 the loss."  In commenting on the phrase "after the loss occurs," the court stated: "A plain,

14 ordinary reading of the contract suggests the policyholder must bring an action for coverage

15 within one year subsequent to or succeeding the loss". *Id* at 139.  But the court then went on

16 to clarify that the phrase "after inception of a loss" differs significantly:

17

18       **This must be distinguished from a contract which requires a policyholder**
   **to bring a coverage action within 12 months after the *inception* of a loss.**
19 **"Inception" is defined as "an act, process, or instance of beginning."**
   **[citation omitted] An "after inception" suit limitation provision requires**
20 **the policyholder to bring an action for coverage within a time certain**
   **subsequent to the beginning of a loss.**
21

22 *Id.* (Emphasis in italics in original.)  The *Panorama* court did not stop there.  It also pointed

23 out the phrase "after inception of the loss" affords insurance companies "greater protection":

24

25       **Of the two types of suit limitation provisions the [inception of the loss**
   **provision] clearly provides greater protection to the insurance company**
26 **where a progressive loss is concerned.**



WILSON
SMITH
COCHRAN
DICKERSON

901 FIFTH AVENUE, SUITE 1700
SEATTLE, WASHINGTON 98164
TELEPHONE: (206) 623-4100
FAX: (206) 623-9273

*Id.* (Emphasis added.)  In the end, the *Panorama* court held that in cases involving collapse from hidden decay, where a policy limits the time to file suit to one year "after a loss occurs," the clock begins to run from the earlier of: 1) the occurrence of an actual collapse; or 2) the date when the decay causing impairment is no longer obscured from view.  *Id.* at 140.  Such is not the case when the policy provides a time certain to file suit "after **inception** of the loss."

In summary, based on established law, and the express observation of the Washington Supreme Court in *Panorama* on the application of suit-limitation provisions with the "inception of the loss" language, this Court must dismiss Wattles' breach of contract/coverage claims because it is beyond any dispute that Wattles' suit was filed two decades after the **beginning** of the progressive loss Wattles claims is covered by the Westchester's policies.

      3.    <u>*Damage No Longer Concealed After January 28, 2011, More Than Two Years Before Wattles Filed Suit*</u>

Wattles would gain no traction from attempting to avoid dismissal through an argument focusing on *Panorama*'s holding that "hidden" means concealed or out of sight, **even if** the Westchester policies' suit-limitation provisions used the "after a loss occurs" language.  This is because, by at least January 28, 2011, when EMS wrote its report, it could no longer be disputed that the sulfuric acid-induced decay, which is alleged to have caused structural instability of the roof trusses, was no longer concealed or out of sight (if it ever was).  The *Panorama* court ultimately held that the suit in that case was timely because the insured had commenced the action "well within one year of the date the 'hidden decay' was no longer 'hidden', i.e., concealed from view."  *Id.* at 144-45; *accord Queen Anne Park Homeowners Ass'n v. State Farm Fire & Cas. Co.*, 2012 U.S. Dist. Lexis 59275, *7 (W.D. Wash. (Judge Thomas Zilly) 2012) ("As recognized [in *Panorama*], a substantial impairment

WILSON
SMITH
COCHRAN
DICKERSON

901 FIFTH AVENUE, SUITE 1700
SEATTLE, WASHINGTON 98164
TELEPHONE: (206) 623-4100
FAX: (206) 623-9273

of structural integrity amounting to collapse might commence during a policy period, but remain hidden (and therefore constitute a continuing occurrence of loss) for some time after the policy expires; in such circumstances, **a suit will be timely so long as it is filed within the contractual period after the decay is revealed.**) (citing *Panorama,* 144Wn.2d at 144-145) (Emphasis added.)

Here, there can be no dispute that Wattles' lawsuit was **not timely** as to Westchester given that 1) the applicable suit-limitation period is one year, and 2) the acid-impacted condition of the roof trusses was revealed (*i.e.,* no longer concealed or "hidden") at least two years earlier. Assuming for purposes of this Motion that the January 28, 2011, EMS Report was the first time the acid-impacted condition of the trusses was revealed to Wattles, Wattles was required to file suit by January 28, 2012, in order to have even a colorable argument that its suit was timely. Wattles failed to do so.

Not only is it abundantly clear that the acid-impacted condition of the roof trusses was no longer concealed (to the extent these conditions were ever "concealed") by January 2011, Wattles made specific allegations against Exide as early as March 2011 that the trusses were substantially impaired as a result of the acid deposits.

Further, by August 2011, when WJE presented its investigation proposal to Farallon (which immediately passed it on to Wattles' lawyer, Kurt Peterson at Cascadia Law Group), Wattles knew that a structural engineer was concerned that acid produced during Exide's operations "may have affected the structural integrity of the roof framing" and that WJE had "observed distress conditions of the wood roof framing." (**Exh. 12** to Stickney Decl.) It is not subject to any reasonable debate that, by that point in time, **18 months before this suit was filed,** the decay and its impact on the roof structure was known to Wattles and its

WESTCHESTER DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT DISMISSAL OF CONTRACT-
BASED CLAIMS DUE TO WATTLES' FAILURE TO FILE
SUIT WITHIN ONE YEAR SUIT LIMITATION PERIOD
(Cause No. 3:14-cv-05097-RBL) – 18

WILSON
SMITH
COCHRAN
DICKERSON

901 FIFTH AVENUE, SUITE 1700
SEATTLE, WASHINGTON 98164
TELEPHONE: (206) 623-4100
FAX: (206) 623-9273

consulting experts.   The Westchester policies required that Wattles file suit on the policy within **12 months** after the inception of a loss.  Wattles' suit against Westchester is, therefore, untimely and its contract claims must be dismissed as a matter of law.

DATED this 13th day of August, 2014.

WILSON SMITH COCHRAN DICKERSON

By   _s/Scott M. Stickney_
     _s/Robert C. Levin_
     Scott M. Stickney, WSBA #14540
     Robert C. Levin, WSBA #18092
     Wilson Smith Cochran Dickerson
     901 Fifth Avenue, Suite 1700
     Seattle, Washington  98164
     stickney@wscd.com
     levin@wscd.com
     (206) 623-4100 telephone
     (206) 623-9273 facsimile

Attorneys  for  Defendants  Westchester  Fire Insurance  Company  and  Westchester  Surplus Lines Insurance Company



WILSON
SMITH
COCHRAN
DICKERSON

901 Fifth Avenue, Suite 1700
Seattle, Washington 98164
Telephone: (206) 623-4100
Fax: (206) 623-9273

1

## CERTIFICATE OF SERVICE

2      The undersigned hereby certifies that on the date below I caused to be served the

3  foregoing document on all counsel of record via the method indicated.

4
**Attorneys for Plaintiff**
5  Devon M. Thurtle Anderson
Brent J. Hardy
6  Heffernan Law Firm, PLLC
1201 Market Street
7  Kirkland, WA 98033-5440
Phone: 425-284-1135 (direct)
8  Fax:   425-284-1147
9  **[X] Via ECF Notification**

10 **Attorneys for Defendant Northfield Ins. Co.**
James T. Derrig
11 Attorney at Law
14419 Greenwood Avenue N.
12 Suite A-372
Seattle, WA 98133-6867
13 Phone: 206-414-7228
Fax:   866-867-1093
14 **[X] Via ECF Notification**
15

16 **Attorneys for Defendant AGCS Marine**
**Ins. Co. and Fireman's Fund Ins. Co.**
17 Joseph D. Hampton
Daniel L. Syhre
18 Betts, Patterson & Mines, P.S.
701 Pike Street, Suite 1400
19 Seattle, WA 98101-3927
Phone: 206-268-8619 direct line
20 Fax:   206-343-7053
21 **[X] Via ECF Notification**

**Attorneys for Defendant Scottsdale Ins. Co.**
Geoffrey J. Bridgman
Tracy N. Grant
Ogden Murphy Wallace, P.L.L.C.
901 Fifth Avenue, Suite 3500
Seattle, WA 98164
Phone: 206-447-7000
Fax:   206-447-0215
**[X] Via ECF Notification**

**Attorneys for Defendant Crum & Forster**
**Specialty Ins. Co.**
Alfred E. Donohue
Wilson Smith Cochran Dickerson
901 Fifth Avenue, Suite 1700
Seattle, WA 98164
Phone: (206) 985-2927
Fax:   (206) 623-9273
**[X] Via ECF Notification**

**Attorneys for Defendant Admiral Ins. Co.**
John A. Bennett
Daniel R. Bentson
Bullivant Houser Bailey PC
1700 Seventh Avenue
Suite 1800
Seattle, WA 98101
Phone: 206-292-8930
**[X] Via ECF Notification**

22

23

24

25

26



WILSON
SMITH
COCHRAN
DICKERSON

901 FIFTH AVENUE, SUITE 1700
SEATTLE, WASHINGTON 98164
TELEPHONE: (206) 623-4100
FAX: (206) 623-9273

**Attorneys for Arrowood Surplus Lines Ins. Co.**
Paul F. Cane
Russell C. Love
Thorsrud Cane & Paulich
1325 Fourth Avenue, Suite 1300
Seattle, WA 98101-2509
Phone: (206) 386-7755
Fax:    (206) 386-7795
**[X] Via ECF Notification**

**Attorneys for Defendant Landmark American Insurance Company**
Curt H. Feig
Thomas J. Braun
NICOLL BLACK & FEIG PLLC
1325 Fourth Ave, Suite 1650
Seattle, WA 98101
Phone: 206-838-7555
Fax:    206-838-7515
**[X] Via ECF Notification**

**Attorneys for Defendant Transamerica Ins. Co., now known as TIG Ins. Co.**
David M. Schoeggl
Stephania C. Denton
Jennifer Sheffield
Lane Powell
1420 5th Avenue, Suite 4200
PO Box 91302
Seattle, WA 98111
Phone: 206-223-7000
**[X] Via ECF Notification**

**SIGNED** this 13th day of August, 2014, at Seattle, Washington.



Becky Phares

WESTCHESTER DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT DISMISSAL OF CONTRACT-
BASED CLAIMS DUE TO WATTLES' FAILURE TO FILE
SUIT WITHIN ONE YEAR SUIT LIMITATION PERIOD
(Cause No. 3:14-cv-05097-RBL) – 21

WILSON
SMITH
COCHRAN
DICKERSON

901 FIFTH AVENUE, SUITE 1700
SEATTLE, WASHINGTON 98164
TELEPHONE: (206) 623-4100
FAX: (206) 623-9273