1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

THE WATTLES COMPANY, a Washington corporation,

                Plaintiff,

    v.

SCOTTSDALE INSURANCE COMPANY, *et. al.*

                Defendants

NO. 3:14cv-05097-RBL

MEMORANDUM IN SUPPORT OF NORTHFIELD'S MOTION FOR PARTIAL SUMMARY JUDGMENT

**Note On Motion Calendar:  December 12, 2014**

## SUMMARY

Northfield Insurance Company, which insured plaintiff's building between November 1, 1995 and November 1, 1996, moves for partial summary judgment dismissing Wattles' claims for breach of contract and declaratory relief on the following grounds:

1.    The policy only covers "loss or damage commencing during the policy period."  There is no evidence that any of the presently claimed damage **began** when Northfield insured the premises, 17 years prior to the claim being made and 15 years after Wattle's tenant, Exide, began conducting battery formation operations.

2.    The policy only covers damage to the building itself and does not cover damage to the land and water around it.

3.    Even if the building damage commenced between November 1995 and November 1996, it is excluded:

MEMORANDUM IN SUPPORT OF NORTHFIELD'S MOTION FOR PARTIAL SUMMARY JUDGMENT- 1

a.    By the pollution exclusion,

b.    By the exclusion for vapor and gas from industrial operations,

c.    By the exclusion for corrosion,

d.    By the exclusion for wear and tear, and

e.    By the exclusion for deterioration.

4.    Northfield also joins in defendant Admiral's motion for partial summary judgment to the extent that motion is based on a contractual suit limitation.  (Dkt. 89, p. 20) Northfield suit limit is identical.  (Dkt. 109 p.22)

## FACTS

In effort to avoid duplication, defendants Northfield, Scottsdale, AGCS, Fireman's Fund and TIG have submitted their Joint Statement Of Common Facts, which will be used to support their summary judgment motions.  (Dkt. 110)  For convenience, the working papers Northfield submits to the Court include a copy of that document and its supporting declaration (Dkt. 108 and 110).

A copy of Northfield's policy is found at Dkt. 109.  Pertinent policy language is quoted in the section below.

## ANALYSIS

**A.**    **THE LOSS DID NOT COMMENCE DURING NORTHFIELD'S POLICY PERIOD**

    **1.**    **The Loss Did Not Begin in 1995-1996.**

Northfield's policy period is November 1995 to 1996.  (Dkt. 3 p.7 line 17). The insurance policy contains this condition:

    **H.**    **POLICY PERIOD, COVERAGE TERRITORY**

Under this Coverage Part:

    **1.**    We cover loss or damage commencing:

        **a.**    During the policy period shown in the Declarations;

MEMORANDUM IN SUPPORT OF NORTHFIELD'S MOTION FOR PARTIAL SUMMARY JUDGMENT- 2

1  (Dkt. 109 p.22)

2       Courts have construed this condition as limiting coverage to damage which first

3  began while the policy was in effect. *See, Kief Farmers Co-op. Elevator Co. v. Farmland Mut.*

4  *Ins. Co.*, 534 N.W.2d 28, 35 (N.D. 1995)(leading case); *Ellis Court Apartments Ltd. Partnership*

5  *v. State Farm Fire & Case. Co.*, 117 Wash. App. 807, 814-816, 72 P.3d 1086, 1090-91

6  (2003)(adopting *Kief*); *General Star Indem. Co. v. Sherry Brooke Revocable Trust*, 243 F.Supp.2d

7  605, 629 (W.D.Tex. 2001)("If a loss did not 'commence' during General Star's policy period,

8  General Star is not liable under its policy of insurance"); *Victorian Condominium Owners*

9  *Assoc. v. Fireman's Fund Ins. Co.*, Case No. C11-1002-JCC (W.D.Wash. 2012)(same

10  observation at p.4 lines 1-3; copy in appendix).   The burden of proving damage

11  commenced during the policy period is on the insured.  *See, Victorian, supra; GCG Associates*

12  *L.P. v. American Cas. Co. of Reading Pa.*, 2008 WL 354620 (W.D. Wash 2008); *accord, City of*

13  *Oak Harbor v. St. Paul Mercury Ins. Co.*, 139 Wash. App. 68, 73, 159 P.3d 422, 424 (2007);

14  *Wellbrock v. Assurance Co. of America*, 90 Wn. App. 234, 242, 951 P.2d 367 (1998).   This

15  proposition is consistent with the general principal that "[t]he insured must show the loss

16  falls within the scope of the policy's insured losses."  *Schwindt v. Underwriters at Lloyd's*

17  *of London*, 81 Wash. App. 293, 298, 914 P.2d 119, 122 (1996).   Here, the coverage scope

18  consists of damage commencing during the policy period.   *GCG Associates, supra*.   It

19  also is consistent with the principal that "a party claiming damages has the burden of

20  proving its losses." *Newport Yacht Basin Ass'n of Condo. Owners v. Supreme Northwest,*

21  *Inc.*, 168 Wash. App. 86, 102, 285 P.3d 70, 80 (2012).

22       The damage presently complained of is from battery formation operations that

23  began in the 1980's.  There is not a scintilla of evidence that the damage claimed by Wattles

24  **began** during Northfield's 1995-1996 policy period.  Since Wattles thus cannot carry its

25  burden of proof on an essential element of its claim, summary judgment is proper. *Celotex*

26  *Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

MEMORANDUM IN SUPPORT OF NORTHFIELD'S MOTION FOR PARTIAL
SUMMARY JUDGMENT- 3

1

2

**2.   No "Collapse" Began In 1995-1996, Nor Could Collapse Have Been
Imminent For 18 Years.**

3

Northfield's policy has an additional coverage for "collapse" similar to the coverage

4

in Admiral's policy for the year 2000.  (Dkt. 90-2 p.9; Dkt. 109 p.28)  The alleged "collapse,"

5

however that term is defined, would have to have begun in 1995.   *See, Mercer Place*

6

*Condominium Assoc. v. State Farm Fire & Cas. Co.*, 104 Wash. App. 597, 603-04, 17 P.3d 626,

7

629-30 (2000).   There is no evidence of a "collapse" taking place 19 years ago.

8

The "commencing" requirement applies regardless of whether the term "collapse"

9

means "substantial impairment of structural integrity" or something else.   Therefore, this

10

motion can be granted in total without wading into the argument over how that term is

11

defined.  *See, e.g., Lake Chelan Shores Homeowners Ass'n v. St. Paul Fire & Marine Ins. Co.*, 176

12

Wash. App. 168, 313 P.3d 408 (2013)(affirming summary judgment based on lack of

13

evidence of "collapse" during policy period without reaching issue of how to define

14

"collapse").  To the extent the definition of "collapse" is at issue in this case, the 9th Circuit

15

has certified that issue to the Washington Supreme Court.  *Queen Anne Park Homeowners*

16

*Assoc. v. State Farm Fire And Cas. Co.*, 9th Circuit Cause No. 12-36021 (Aug. 19, 2014)(copy in

17

appendix).[1]  If the present Court decides to await the decision in *Queen Anne,*[2] it is worth

18

noting that if the Washington court defines "collapse" as an "imminent danger of actual

19

collapse," as many courts have done, *e.g., KAAPA Ethanol, LLC v. Affiliated FM Ins. Co.*, 660

20

F.3d 299, 306 (8th Cir. 2011), *Assurance Co. of America v. Wall & Assoc. LLC* , 379 F.3d 557, 563

21

(9th Cir. 2004), then the "collapse" cannot possibly have commenced over 18 years before the

22

claim was even made as it would be illogical to conclude that collapse was "imminent" for

23

18 years.  *See, Buczek v. Continental Cas. Ins. Co.*, 378 F.3d 284 (3rd Cir. 2004).

24

25

26

---

[1]   The Washinton court has scheduled oral argument for January 15, 2015.

[2]   Of course, the definition of "collapse" is irrelevant to Wattles' claims for damage not consisting of "collapse."  Therefore, the non-collapse portion of Wattles' claim can be dismissed without wading.

MEMORANDUM IN SUPPORT OF NORTHFIELD'S MOTION FOR PARTIAL
SUMMARY JUDGMENT- 4

*James T Derrig*
*Attorney At Law PLLC*
14419 Greenwood Ave North, Suite A-372
Seattle, WA  98133
(206) 414-7228

**B.**     **THE POLICY DOES NOT COVER DAMAGE TO LAND**

Some of Wattle's claim, especially the broad one for "Estimated costs of clean up, MTCA"[3] appear to involve damage to property other than the building itself.  To the extent Wattles' claim includes damage to the land the building is located on (such as from pollutants in the ground), the insurance policy only covers the building, not the land.  The policy states in part:

> **A. Coverage**
>
> . . . .
>
> **1.**     **Covered Property**
>
> Covered Property, as used in this Coverage Part, means the following types of property for which a Limit of Insurance is shown in the Declarations:
>
> a.     **Building**, meaning the building or structure described in the Declarations
>
> . . . .
>
> **2.**     **Property Not Covered**
>
> Covered Property does not include:
>
> . . . .
>
> **h.**     Land (including land on which the property is located), water, growing crops or lawns.

(Dkt. 109 pp.12-13)

Because of the above language, the insurance policy only applies to damage to the building itself, not damage to the earth around it.  *See, Fujii v. State Farm Fire & Cas. Co.*, 71 Wash. App. 248, 249, 857 P.2d 1051, 1052 (1993).  Thus, Wattle's claim for "MTCA clean up costs" must be dismissed to the extent it involves contamination to anything other than the building.  Put another way:  This case must focus on damage to the property that the insurance policy actually covers.

---

[3] Short for "Model Toxics Control Act," Washington's hazardous waste clean up statutes found at RCW 70.105D.  *See generally Tailesen Corp. v. Razore Land Co.*, 135 Wash. App. 106, 144 P.3d 1185 (2006).

MEMORANDUM IN SUPPORT OF NORTHFIELD'S MOTION FOR PARTIAL SUMMARY JUDGMENT- 5

**C.     THE LOSS IS EXCLUDED AS POLLUTION, CORROSION, DETERIORATION, AND WEAR AND TEAR**

**3.     THE CLAIM IS BARRED BY THE POLLUTION EXCLUSION**

Even if Wattles can show that building damage commenced during Northfield's policy period, the loss is excluded.  The physical damage claimed by Wattles consists of acid damage to concrete, wood and metal, all emanating from exposure to the acid Exide used to make batteries.  Wattles wants the cost of repairing that damage.  Wattles also appears to claim the building itself is contaminated and seeks "Estimated Costs of Cleanup: MTCA."  (Dkt. 108-4 p.1)

Northfield's policy excludes loss caused by:

Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss." But if loss or damage by the "specified causes of loss" results, we will pay for the resulting damage caused by the "specified causes of loss."

(Dkt. 109 p.26)

The exclusion contains two defined terms.  First, pollution caused by a "specified cause of loss" is not subject to the exclusion.  However, "Specified Causes of Loss" is limited to the following:

Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

(Dkt. 109 p.29)

The acid damage at Wattle's building was not caused by a "specified cause of loss," so that definition need not be discussed further.  The second definition is far more pertinent:

"Pollutants" means any solid, <u>liquid</u>, <u>gaseous</u> or thermal irritant or contaminant, including smoke, vapor, soot, fumes, <u>acids</u>, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

(Dkt. 109 p.21; underline added)

MEMORANDUM IN SUPPORT OF NORTHFIELD'S MOTION FOR PARTIAL SUMMARY JUDGMENT- 6

*James T Derrig*
*Attorney At Law PLLC*
14419 Greenwood Ave North, Suite A-372
Seattle, WA  98133
(206) 414-7228

Washington courts have considered similar exclusions with similar definitions in liability insurance policies, and have found them to be unambiguous.  *See, Quadrant Co. v. American States Ins. Co.*, 154 Wash.2d 165, 110 P.3d 733 (2005); *Cook v. Evanson*, 81 Wash. App. 149, 920 P.2d 1223 (1996).  Other courts have reached the same conclusion.  *See, e.g, Nautilus Ins. Co. v. Country Oaks Apartments Ltd.*, 566 F.3d 452 (5th Cir. 2009)(Texas law); *Reed v. Auto-Owenrs Ins. Co.*, 667 S.E.2d 90 (Ga. 2008); *Firemen's Fund Ins. Co. of Wash. D.C. v. Kline & Son Cement Repair, Inc.*, 474 F.Supp.2d 779 (E.D.Va. 2007).

The pollutant involved here—sulfuric acid—was specifically determined to be excluded in *TravCo Ins. Co. v. Ward*, 736 S.E.2d 321 (Va. 2012) and *TravCo Ins. Co. v. Ward*, 715 F.Supp.2d 699 (E.D. Va. 2010).  In those cases, homes suffered corrosion due to mismanufactured "Chinese drywall" that released sulfuric gas. 715 F.Supp.2d at 703.  Both courts concluded that the gas was a pollutant subject to the exclusion:

> The sulfuric gases at issue in this case were a pollutant within the purview of the exclusion, and we hold that the pollution exclusion is applicable and unambiguously excludes from coverage any damage resulting from the emission of gas from the drywall.

736 S.E.2d at 330; *see* 715 F.Supp.2d at 717; *see, also, Ross v. C. Adams Const. & Design, LLC*, 70 So.3d 949, 955-6 (La.App. 2011)("The sulfuric gas emitted from the Rosses' drywall qualifies as a pollutant pursuant to this definition in the policy. Therefore, any damage caused by the release of these gases is excluded from coverage . . .").

Here, Exide used thousands of gallons of sulphuric acid as part of it battery formation operations.  (Dkt. 109-5 p.5)  The acid itself, and the gasses it emitted, are "pollutants" as that term is defined in the policy.  Likewise, the MTCA clean up costs involve, by definition, toxic substances that qualify as "pollutants."  The loss thus is excluded.

MEMORANDUM IN SUPPORT OF NORTHFIELD'S MOTION FOR PARTIAL SUMMARY JUDGMENT- 7

1

2

3     **4.    THE CLAIM IS BARRED BY THE EXCLUSION FOR VAPOR FROM
           INDUSTRIAL OPERATIONS**

4     The policy will not pay for loss or damage caused by:

5     **b.**    Smoke, vapor or gas from agricultural smudging or industrial operations.

6     (Dkt. 109 p.25 ¶2.c.)

7     Exides' battery formation operations, which produced sulfuric vapors and gasses,

8     are industrial operations.  *See, U.S. Fid. & Guar. Co. v. First State Bank & Trust Co.*, 125

9     F.3d 680, 684 (8th Cir. 1997).  The sulfuric gasses thus are subject to this exclusion.

      **5.    THE DAMAGE TO THE BUILDING AND ITS FIXTURES CONSISTS
10          OF "CORROSION"**

11    Because exclusions are read *seriatim* and each applies independently, there is no

12    coverage so long as any one exclusion applies.  *See,  Harrison Plumbing & Heating, Inc. v.*

13    *New Hampshire Ins. Grp.*, 37 Wash. App. 621, 627, 681 P.2d 875, 880 (1984); *Garson*

14    *Management Co., LLC v. Travelers Indem. Co. of Illinois*, 300 A.D.2d 538, 752 N.Y.S.2d 696

15    (2002).  Even if the above exclusions did not apply, the policy also excludes:

16    (2)    Rust, <u>corrosion</u>, fungus, decay, deterioration, hidden or latent defect
              or any quality in property that causes it to damage or destroy itself
17

18    (Dkt. 109 p.37 ¶H.d.(2); underline added)

19    Numerous cases have held that damage from sulfuric acid attack is excluded as

20    "corrosion."  *See, Arkwright-Boston Manuf. Mut. Ins. Co. v. Wausau Paper Mills Co.*, 818 F.2d

21    591, 594 (7th Cir. 1987);  *TravCo v. Ward, supra*, 715 F.Supp.2d at 714 & 736 S.E.2d at 328;  *In*

22    *re Chinese Manufactured Drywall Products Liability Litigation*, 759 F.Supp.2d 822, 846-7 (E.D.

23    La. 2010); s*ee, also, Gilbane Building Co. v. Altman Co.*, 2005 WL 534906 (Ohio App.

24    2005)(unpublished; concrete damage from muriatic acid).  These cases should apply here.

25

26

MEMORANDUM IN SUPPORT OF NORTHFIELD'S MOTION FOR PARTIAL
SUMMARY JUDGMENT- 8

1

2    **6.      THE DAMAGE WAS FROM EXIDE'S NORMAL OPERATIONS**
     **PERMITTED BY THE LEASE AND THUS WAS "WEAR AND TEAR"**

3

4         In addition to excluding pollution and corrosion, the insurance policy excludes:

5         (1)      Wear and tear

6    (Dkt. 109 p.37 ¶H.d.(1)

7         Damage resulting from a tenant's normal operations qualifies as "wear and tear."

8         The expressions 'reasonable wear,' 'ordinary wear and tear' and similar
          phrases apply more naturally to the gradual deterioration <u>resulting from</u>
9         <u>use</u>, lapse of time, and to a certain extent to the operation of the elements, but
          do not cover destruction, in whole or in part, of a structure by some sudden
10        catastrophe.

11   *Publishers Bldg. Co. v. Miller,* 25 Wn.2d 927, 939, 172 P.2d 489 (1946)(underline added); *see,*

12   *also, Miller v. Geels,* 643 N.E.2d 922, 927 (Ind. Ct. App. 1994)("ordinary wear and tear

13   refers to the gradual deterioration of the condition of an object which results from its

14   appropriate use over time").

15        The acid emissions involved here were the normal and direct result of Exide's use of

16   the building for battery formation operations, as specifically identified in and permitted by

17   Exide's lease with Wattles.  The building was exposed to these chemical agents for almost

18   30 years, and there is no evidence or suggestion that the damage is the result of a sudden

19   catastrophe.  The damage thus is excluded.  *See, Rapid Park Industries v. Great Northern Ins.*

20   *Co.*, 502 Fed.Appx. 40 (2nd Cir. 2012)(applying same exclusion to deterioration of concrete

21   and steel in building); *Libbey-Owens-Ford Co. v. Ins. Co. of N. Am.*, 9 F.3d 422, 424 (6th Cir.

22   1993).

23

24

25

26

MEMORANDUM IN SUPPORT OF NORTHFIELD'S MOTION FOR PARTIAL
SUMMARY JUDGMENT- 9

*James T Derrig*
*Attorney At Law PLLC*
14419 Greenwood Ave North, Suite A-372
Seattle, WA  98133
(206) 414-7228

1

2

**7.    GRADUAL DEGRADATION FROM LONG-TERM ACID EXPOSURE
        IS "DETERIORATION"**

3

The policy also excludes:

4

(2)    Rust, corrosion, fungus, decay, <u>deterioration</u>, hidden or latent defect
       or any quality in property that causes it to damage or destroy itself

5

(Dkt. 109 p.37 ¶H.d.(2); underline added)

6

Deterioration is a broad term encompassing any long-term, gradual degenerative

7

process.  *See, Brodkin v. State Farm Fire & Casualty Co.* (1989) 265 Cal. Rptr. 710, 714 (App.

8

1989)(deterioration of concrete due to long-term exposure to corrosive chemical); *see,*

9

*generally, Atlantic Mut. Ins. Co. v. Lotz,* 384 F. Supp. 2d 1292, 1303 (E.D. Wisc. 2005)(defining

10

term). 28 years of degradation from sulfuric acid exposure qualifies as "deterioration." *See,*

11

*Jardine v. Maryland Cas. Co.,* 823 F.Supp.2d 955, 961 (N.D. Cal. 2011), *aff'd,* 532 Fed.Appx.

12

662 (9th Cir. 2013)(sulfur exposure); *Alex R. Thomas & Co. v. Mutual Service Cas. Ins. Co.,* 119

13

Cal. Rptr. 2d 394, 399 (App. 2002)(chlorine exposure).  *Jardine* is not fairly distinguishable

14

from the present case and, since the 9th Circuit has affirmed it, the same result should

15

apply here.

16

**D.    THE 2-YEAR CONTRACTUAL SUIT LIMIT APPLIES**

17

Northfield's policy states:

18

**LEGAL ACTION AGAINST US**

19

No one may bring a legal action against us under this Coverage Part unless:

20

1.    There has been full compliance with all of the terms of this Coverage
      Part; and

21

22

2.    The action is brought within 2 years after the date on which the direct
      physical loss or damage occurred.

23

(Dkt. 109 p.22)

24

This provision is identical to the one discussed in Admiral's motion for summary

25

judgment.  (Dkt. 89, p. 20)  Application of the contractual suit limit has been amply briefed

26

MEMORANDUM IN SUPPORT OF NORTHFIELD'S MOTION FOR PARTIAL
SUMMARY JUDGMENT- 10

1  in Admiral's motion as well as defendant Weschester's.  (Dkt. 75)  If Admiral's motion is

2  granted then Northfield also should be dismissed.

3  ## CONCLUSION

4       For the above reasons, the Court should grant this motion and dismiss Wattles'

5  claims against Northfield for breach of contract and declaratory judgment..

6            DATED this 20th day of November, 2014.

7                           JAMES T. DERRIG
                            ATTORNEY AT LAW PLLC

8

9                           _____
                            James T. Derrig, WSBA 13471
10                          Attorney for Northfield.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

MEMORANDUM IN SUPPORT OF NORTHFIELD'S MOTION FOR PARTIAL
SUMMARY JUDGMENT- 11