THE HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| THE WATTLES COMPANY, a Washington corporation,<br><br>　　　　　　Plaintiff,<br>v.<br>SCOTTSDALE INSURANCE COMPANY, et al.,<br><br>　　　　　　Defendants. | NO. 3:14-05097-RBL<br><br>DEFENDANT SCOTTSDALE INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>**Note on Motion Calendar:**<br>**December 19, 2014** |

## I. RELIEF REQUESTED

Defendant Scottsdale Insurance Company ("Scottsdale") respectfully requests that the Court grant its Motion for Partial Summary Judgment and dismiss plaintiff, The Wattles Company's ("Wattles"), breach of contract claims. This action involves claims for breach of insurance contract, declaratory relief, CPA violations, bad faith, and damages with respect to over 27 first-party property insurance policies issued by the insurer defendants (including Scottsdale) to Wattles, the owner of a large warehouse located at 1901 - 2001 Fryar Avenue in Sumner, Washington.[1] As noted in other defendants' motions, this lawsuit arose after Wattles'

---

[1] At the time of this motion, Wattles has resolved or dismissed its claims against all but six (6) of the defendant insurers. The Scottsdale policies at issue in the case (Nos. CFS0115693, CFS0132963, CFS0147678, and CFS0167748) are attached as Exhibits A-D to the Declaration of Tracy N. Grant in Support of Scottsdale's Motion for Summary Judgment. The Scottsdale policies, which contain the same coverage provisions and exclusions, will be collectively referred to herein as "Scottsdale's Policies."

{TNG1250596.DOC;1/00335.001970/ }
SCOTTSDALE INSURANCE COMPANY'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 1  (3:14-05097-RBL)

OGDEN MURPHY WALLACE, P.L.L.C.
901 Fifth Avenue, Suite 3500
Seattle, Washington 98164-2008
Tel: 206.447.7000/Fax: 206.447.0215

longtime commercial tenant, Exide Technologies ("Exide"), ceased its battery-formation operations at Wattles' warehouse, failed to conduct repairs pursuant to the lease agreement upon vacating, and filed for bankruptcy when Wattles filed suit against it in Pierce County Superior Court.

As a matter of law, Wattles' breach of contract claims against Scottsdale should fail. Decades before filing this action, Wattles knew of, and expected, the damage Exide's operations was causing to its warehouse and therefore, Wattles' claims are untimely under the two (2) year suit limitation contained in Scottsdale's Policies. In addition, based upon the reports of Wattles' own experts and the sworn testimony of Mr. Wattles himself, the alleged damage did not commence during Scottsdale's policy periods (November 1, 1996 through November 1, 2000), <u>and</u> the cause of the damage was the discharge of pollutants (including specifically, sulfuric acid), wear and tear, corrosion, decay and deterioration -- <u>all</u> of which are explicitly excluded under Scottsdale's Policies.[2]

## II. STATEMENT OF FACTS

Scottsdale relies upon and incorporates by this reference the facts and evidence set forth in Defendants' Joint Statement of Common Facts. *See* Dkt No. 110. In order to avoid unnecessary duplication for the Court, Scottsdale also relies upon the facts and evidence set forth in sections II and III of Admiral Insurance Company's Motion for Partial Summary Judgment. *See* Dkt No. 89.

## III. ISSUES PRESENTED

Should Wattles' breach of contract claims against Scottsdale be dismissed where Scottsdale's Policies do <u>not</u> provide coverage for Wattles' alleged losses and damages and/or the Policies explicitly exclude coverage for the alleged losses and damages?

//

---

[2] Scottsdale's Motion for Partial Summary Judgment seeks to dismiss Wattles' contractual claims only. While not addressed herein, Scottsdale explicitly reserves the right to move for summary dismissal of the remaining (extra-contractual) claims at a later date.

{TNG1250596.DOC;1/00335.001970/ }
SCOTTSDALE INSURANCE COMPANY'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 2 (3:14-05097-RBL)

OGDEN MURPHY WALLACE, P.L.L.C.
901 Fifth Avenue, Suite 3500
Seattle, Washington 98164-2008
Tel: 206.447.7000/Fax: 206.447.0215

## IV. EVIDENCE RELIED UPON

This motion is based upon records and files pertaining to the case, the Declaration of Tracy Grant with its attached exhibits, Defendants' Joint Statement of Common Facts (Dkt No. 110), Declaration of Jim Derrig in Support of Defendants' Joint Statement of Common Facts and its attached exhibits (Dkt No. 108), and the law as set forth below.

## V. ARGUMENT

### A. General Rules Regarding Summary Judgment.

"Summary judgment procedure is . . . an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting FRCP 1). The Court must grant a motion for summary judgment if the evidence shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FRCP 56(c). "The moving party 'bears the initial responsibility of informing the district court of the basis for its motion. . . .'" *El v. SEPTA*, 479 F.3d 232, 237 (3d Cir. 2007) (quoting *Celotex*, 477 U.S. at 323 (1986)). "The burden then shifts to the nonmoving party 'to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Padillas v. Stork-Gamco, Inc.*, 186 F.3d 412, 414 (3d Cir. 1999) (quoting *Celotex*, 477 U.S. at 322). This burden "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting FRCP 56(e)).

In the absence of disputed material facts, summary judgment is the appropriate vehicle for resolving disputes regarding the interpretation and construction of insurance policies because such disputes present questions of law. *Stouffer & Knight v. Continental Cas. Co.*, 96 Wn. App. 741, 747 (1999).

//

{TNG1250596.DOC;1/00335.001970/ }
SCOTTSDALE INSURANCE COMPANY'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 3 (3:14-05097-RBL)

OGDEN MURPHY WALLACE, P.L.L.C.
901 Fifth Avenue, Suite 3500
Seattle, Washington 98164-2008
Tel: 206.447.7000/Fax: 206.447.0215

B. **General Rules Regarding Construction/Interpretation of Insurance Policies.**

An insurance policy is a contract and should be construed as such. *Teague Motor Co. v. Federated Service Ins. Co.*, 73 Wn. App. 479, 482 (1994). The interpretation of an insurance policy is a matter of law. *Drollinger v. Safeco Ins. Co. of Am.*, 59 Wn. App. 383, 386 (1990). Courts examine a policy "to determine whether under the plain meaning of the contract there is coverage." *Kitsap County v. Allstate Ins. Co.*, 136 Wn.2d 567, 576 (1998). The policy should be given a fair, reasonable, and sensible construction, consistent with the apparent object and intent of the parties. *Teague* at 482. If clear and unambiguous, the Court must enforce the policy as written and may not modify the contract or create ambiguity where none exist. *Transcontinental v. Washington Pub. Util. Dist.' Util. Sys.*, 111 Wn.2d 452, 456 (1988).

"A determination of coverage involves two steps: first, '[t]he insured must show the loss falls within the scope of the policies insured losses.'" *Moeller v. Farmers Ins. Co. of Wash.*, 173 Wn.2d 264, 271–72 (2011) (alteration in original) (quoting *McDonald v. State Farm Fire & Cas. Co.*, 119 Wn.2d 724, 731 (1992)). "Then, in order to avoid coverage, the insurer must 'show the loss is excluded by specific policy language.'" *Id.* (quoting *McDonald*, 119 Wn.2d at 731)). Because exclusions are read *seriatim* and each applies independently, there is no coverage so long as any one of the exclusions apply. *See, Harrison Plumbing & Heating, Inc. v. New Hampshire Ins. Grp.*, 37 Wn. App. 621, 627 (1984).

The general rule that policy exclusions are strictly construed against the insurer is merely an aid in determining the intention of the parties; strict application should not trump plain, clear language resulting in a strained or forced construction. *City of Bremerton v. Harbor Ins. Co.*, 92 Wn. App. 17, 21 (1988). If the language of an exclusion is clear and unambiguous, the clause must be enforced as written, and the court cannot modify the contract or create ambiguity where none exist. *Id.* at 23. Washington law does not force insurers to pay for losses that they have not contracted to insure. *Polygon NW. Co. v. American Nat. Fire Ins. Co.*, 143 Wn. App. 753, 775 (2008). Unambiguous policy exclusions will be enforced by the courts. *Drollinger* at 386.

{TNG1250596.DOC;1/00335.001970/ }
SCOTTSDALE INSURANCE COMPANY'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 4 (3:14-05097-RBL)

OGDEN MURPHY WALLACE, P.L.L.C.
901 Fifth Avenue, Suite 3500
Seattle, Washington 98164-2008
Tel: 206.447.7000/Fax: 206.447.0215

Here, Wattles cannot meet its burden to show that its alleged losses fall within the scope of Scottsdale's Policies. Even if Wattles could meet its initial burden to trigger coverage under any of the policies (which it cannot), the policies contain several distinct exclusions that independently bar coverage for Wattles' breach of contract claims.

### C. Wattles' Alleged Losses Did Not Commence During Scottsdale's Policy Periods.

The insurance policies issued by Scottsdale between November 1, 1996 and November 1, 2000, provide coverage for "loss or damage commencing ... [d]uring the policy period shown in the Declarations." *See* Grant Decl. at Exs. A-D. Courts have construed the term "commencing" as limiting coverage to damage which first began while the policy was in effect. *See, Kief Farmers Co-op. Elevator Co. v. Farmland Mut. Ins. Co.*, 534 N.W.2d 28, 35 (N.D. 1995); *Ellis Court Apartments Ltd. Partnership v. State Farm Fire & Case. Co.*, 117 Wn. App. 807, 814-816 (2003)(adopting *Kief*); *General Star Indem. Co. v. Sherry Brooke Revocable Trust*, 243 F.Supp.2d 605, 629 (W.D.Tex. 2001)("If a loss did not 'commence' during General Star's policy period, General Star is not liable under its policy of insurance").

The burden of proving damage commenced during the policy period is on the insured. *City of Oak Harbor v. St. Paul Mercury Ins. Co.*, 139 Wn. App. 68, 73 (2007); *Wellbrock v. Assurance Co. of America*, 90 Wn. App. 234, 242 (1998). This proposition is consistent with the general principal that "[t]he insured must show the loss falls within the scope of the policy's insured losses." *Schwindt v. Underwriters at Lloyd's of London*, 81 Wn. App. 293, 298 (1996). It also is consistent with the principal that "a party claiming damages has the burden of proving its losses." *Newport Yacht Basin Ass'n of Condo. Owners v. Supreme Northwest, Inc.*, 168 Wn. App. 86, 102 (2012).

In the present case, there is no evidence whatsoever that the damage claimed by Wattles <u>first began</u> during Scottsdale's policy periods (November 1, 1996 through November 1, 2000). In fact, according to Mr. Wattles, Exide's battery formation operations started damaging the warehouse "early in Exide's tenancy" which began back in the 1980's. *See* Dkt No. 108, Ex. 1

{TNG1250596.DOC;1/00335.001970/ }
SCOTTSDALE INSURANCE COMPANY'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 5  (3:14-05097-RBL)

OGDEN MURPHY WALLACE, P.L.L.C.
901 Fifth Avenue, Suite 3500
Seattle, Washington 98164-2008
Tel: 206.447.7000/Fax: 206.447.0215

at 50:15-22. Wattles concedes by its own claims and allegations in this lawsuit that the damage began years, if not decades <u>before</u> Scottsdale insured the property (between 1996-2000). Since Wattles cannot prove the alleged damage commenced during Scottsdale's policy periods, it cannot carry its burden of proof on an essential element of its claim and summary judgment is proper. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

**D.    Scottsdale's Suit-Limitation Provision Bars Wattles' Claims.[3]**

Washington courts consistently uphold contractual limitation provisions in insurance contracts. *See, e.g., Panorama Village Condominium Owners Ass'n v. Allstate Ins. Co.*, 144 Wn.2d 130, 138–39 (2001) (enforcing one-year suit limitations clause in property insurance policy); *Wothers v. Farmers Ins. Co.*, 101 Wn. App. 75, 79-80 (2000) (a contractual limitation prevails over a general statute of limitation unless the provision is prohibited by statute or public policy or is unreasonable); *Ashburn v. Safeco Ins. Co.*, 42 Wn. App. 692, 695 (1986) (holding that unambiguous limitation clauses are valid, that insurance contracts may include reasonable limitations on liability, and listing supporting cases); *Simms v. Allstate Ins. Co.*, 27 Wn. App. 872, 873–74, 877 (1980) (upholding one-year limitation period in fire insurance policy).

RCW 48.18.200(1)(c) expressly permits limitation clauses in insurance contracts if they are not for "a period of less than one year from the date of the loss." *See, Ashburn v. Safeco Ins. Co.*, 42 Wn. App. 692, 696–97 (1986) ("the statute impliedly authorizes, but does not require, contractual limitations periods of one year.").

Here, Scottsdale's Policies include the following suit limitation provision:

> **D.    LEGAL ACTION AGAINST US**
>
> No one may bring a legal action against us under this Coverage Part unless:
>
> 1.    There has been full compliance with all of the terms of this Coverage Part; and
>
> 2.    The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

---

[3] In addition to the arguments and authorities set forth herein, Scottsdale incorporates by this reference the briefing submitted by co-defendant Admiral Insurance Company in its Motion for Partial Summary Judgment (Dkt No. 89) and its Reply (Dkt. No. 102) regarding the application of the contractual suit limitation clause.

{TNG1250596.DOC;1/00335.001970/ }
SCOTTSDALE INSURANCE COMPANY'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 6 (3:14-05097-RBL)

OGDEN MURPHY WALLACE, P.L.L.C.
901 Fifth Avenue, Suite 3500
Seattle, Washington 98164-2008
Tel: 206.447.7000/Fax: 206.447.0215

This provision is unambiguous and clearly requires an action be commenced *within two years* of the date the direct physical loss or damage occurs. As discussed above, Scottsdale's Policies only cover damage that commences during the policy periods. Thus, any loss or damage that commenced before November 1, 1996, or after November 1, 2000, is not covered. *See Mercer Place Condo Ass'n v. State Farm Fire & Cas Co.*, 104 Wn. App. 597, 606 (2000). Because the event triggering the suit-limitation period must have occurred no later than November 1, 2000, the two-year suit limitation period began running on this date (at the very latest), and expired no later than November 1, 2002. Because Wattles did not file its lawsuit against Scottsdale until February 4, 2014, *almost 12 years after the last suit-limitations period expired*, Wattles' claims are time-barred.

Even if the Court ignores the fact that Wattles' loss must have commenced during one of Scottsdale's policy periods <u>and</u> accepts *arguendo* that the direct physical loss or damage commenced at the latest date possible (the date Exide ceased its battery formation operations in 2009), Wattles still did not file its action before the expiration of the two-year limitations period.

In light of the above, Scottsdale anticipates that Wattles will attempt to salvage its claims by arguing there is coverage because: (1) the suit-limitations period did not begin running until it *discovered* the loss; and/or (2) the damage was "hidden" and therefore covered under Scottsdale's additional grant of coverage for collapse caused by hidden decay. As discussed below, neither argument is availing.

    *i.*    *Wattles Discovered the Loss More than Two Years before it Filed its Lawsuit.*

Any attempt by Wattles to make a public policy argument for interpreting Scottsdale's Policies to require the commencement of a lawsuit within two-years of the <u>discovery</u> of the loss (rather than its <u>occurrence</u>) is inapposite to the plain language of the policy, Washington case

{TNG1250596.DOC;1/00335.001970/ }
SCOTTSDALE INSURANCE COMPANY'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 7 (3:14-05097-RBL)

OGDEN MURPHY WALLACE, P.L.L.C.
901 Fifth Avenue, Suite 3500
Seattle, Washington 98164-2008
Tel: 206.447.7000/Fax: 206.447.0215

law[4] and RCW 48.18.200. (*See also,* Admiral's Motion and Reply brief on this issue at Dkt No. 89 pg. 20-23 and Dkt. No. 102 pg. 9-11). Regardless, the argument that the running of the limitations period does not begin until the discovery of the loss does not save Wattles' claims as the Lease Addendum prepared in 1999, Mr. Wattles' own sworn testimony, Wattles' experts' observations and reports, and Wattles' efforts to recover from Exide all prove Wattles discovered the damage to the property, and specifically the damage caused by the acid, more than two years <u>before</u> Wattles filed its lawsuit.[5]

Here, Wattles seeks coverage for the damage caused by sulfuric acid to the wood trusses, roof, concrete floor, and walls of its warehouse. *See* Dkt. No. 108, Ex. 1 p. 35, Ex. 5 pg. 16. As Mr. Wattles himself testified, he knew sulfuric acid was damaging the premises *"early on"* in Exide's tenancy (which began in 1981), and certainly knew about the damage caused by the sulfuric acid *"a couple of years before the Addendum A was signed in 1999"*. *See id.,* Ex. 1 at 50:4-22. In fact, as Mr. Wattles explained, the Lease Addendum merely *"put in writing the fact that everybody understood that [destruction of the building by Exide's operations] was part of it [the ongoing maintenance problem]..." See id.* at 52:13-18. Mr. Wattles' testimony that the damage *"obviously predated 1999 because it lead to this [the Lease Addendum A] when that previous lease needed to be renegotiated"* shows Wattles discovered the damage more than a decade before Wattles filed its claim. *See id.* at 55:24-56:4.

Any attempt by Wattles to try and argue that it did not discover the damage until after Farallon completed its report in 2013 contradicts Mr. Wattles' own sworn testimony and the plain language of the Lease Addendum Wattles prepared in 1999. Significantly, the Lease Addendum states that the *"Landlord and Tenant agree that Tenant has made modifications and*

---

[4] *See, Panorama Village Condominium Owners Ass'n v. Allstate Ins. Co.,* 144 Wn.2d 130, 144 (2001) (Washington Supreme Court reversed the Court of Appeals for imposing a discovery rule on a policy's suit-limitation provision).

[5] *See* Dkt. 90 at p. 233 (letter from WJE to Farallon, dated August 24, 2011) and p. 216 (letter from Cascadia Law Group to Exide, dated March 1, 2011); p. 219 (letter from Cascadia Law Group to Exide, dated April 8, 2011); p. 221 (letter from Cascadia Law Group to Exide, dated April 25, 2011) showing that Wattles was aware of both the damage and its cause by 2011, at the latest.

{TNG1250596.DOC;1/00335.001970/ }
SCOTTSDALE INSURANCE COMPANY'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 8 (3:14-05097-RBL)

OGDEN MURPHY WALLACE, P.L.L.C.
901 Fifth Avenue, Suite 3500
Seattle, Washington 98164-2008
Tel: 206.447.7000/Fax: 206.447.0215

*additions to the Premises under the prior leases dated August 11, 1981 and August 11, 1986 and **the Premises has experienced extraordinary (i.e., beyond normal) wear and tear during the period of the prior Leases by virtue of the Tenant's activities on the Premises**.*" *See* Dkt. No. 108 at Ex. 9 pg. 10. Significantly, Mr. Wattles testified that the "wear and tear" referred to in the Lease Addendum was the destruction caused by acid. *See id.* at Ex. 1 at 48:17-18; 43:22-24. Thus, the Lease Addendum clearly shows that Wattles' alleged damages occurred during both of the prior leases (dated 1981 and 1986) and was discovered by Wattles long before it filed its lawsuit in February 2014.

In addition, Wattles cannot deny that it discovered the damage to the roof, trusses, and flooring by 2011, because that is when it employed counsel to pursue compensation for these exact dame damages from Exide. *See* Dkt. 90 at p. 216 (letter from Cascadia Law Group to Exide, dated March 1, 2011); p. 219 (letter from Cascadia Law Group to Exide, dated April 8, 2011); p. 221 (letter from Cascadia Law Group to Exide, dated April 25, 2011).

In light of the above, even if the "*date on which the direct physical loss or damage occurred*" is interpreted to mean "*the date the direct physical loss or damage is discovered*" (an interpretation Scottsdale disputes), Wattles' claims must still be dismissed because Wattles did not bring its action within two years of discovering the damage.

      *ii.*    *The damage was not "hidden" from Wattles.*

Any attempt by Wattles to argue that its claims are timely because the damage to the roof, trusses, and floor was "hidden" and it did not actually discover the damage until it received Farallon's final report in February 2013, not only contradicts Mr. Wattles' clear testimony and the Lease Amendment (as discussed above), it is rebutted by the observations of Wattles' own experts and common sense.

The issue of "hidden decay" and "collapse" have been amply briefed in co-defendant Admiral Insurance Company's Motion for Partial Summary Judgment (Dkt No. 89 pg. 14-23) and Admiral's Reply in Support of Motion for Partial Summary Judgment (Dkt No. 102 pg. 5-

{TNG1250596.DOC;1/00335.001970/ }
SCOTTSDALE INSURANCE COMPANY'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 9   (3:14-05097-RBL)

OGDEN MURPHY WALLACE, P.L.L.C.
901 Fifth Avenue, Suite 3500
Seattle, Washington 98164-2008
Tel: 206.447.7000/Fax: 206.447.0215

11), as well as Northfield's Motion for Partial Summary Judgment (Dkt No111 pg. 4). Therefore, Scottsdale adopts and incorporates Admiral's and Northfield's briefing as though fully set forth herein.[6]

Furthermore, it cannot be denied - or ignored - that Wattles' own experts observed the damage to the floor, walls, and truss joints of the warehouse back in 2011(see EMS's report dated January 28, 2011 and the proposal submitted by WJE on August 24, 2011 which explicitly identify the alleged damage). *See id.* at Exs. 7 and 10. These materials document that Wattles' experts made "visual observations of extreme staining and pitting of the cement floors and walls of the building" and saw "staining throughout the structures [that] appeared at regular intervals under the truss joints." *See* Dkt No. 108 at Ex. 7 pg. 4. Wattles' experts further observed that "all of the horizontal truss surfaces" were "burned" and "charred" and that the most severely charred trusses had "a curled and pealed surface." *Id.* At that time, "majority of the beams had a blackened surface which was sticky to the touch" and "[a]ll of the metal truss plates and rivets exhibited extreme corrosion[.]" *Id.* Thus, there can be no genuine dispute that by 2011 (at the very latest) the damage to the warehouse was ***not*** hidden. Wattles' anticipated argument that the damage was "hidden" until sometime in 2013 simply belies the truth. It also defies logic, as all of the structural elements in the warehouse are out in the open and could be seen by anyone who looked.

Furthermore, any argument by Wattles that (notwithstanding all of the evidence to the contrary) it did not actually know about the damage to the warehouse must fail where Wattles' agents (the experts and consultants Wattles expressly hired to assess "any damage to the warehouse caused by Exide's battery-manufacturing operations") were undeniably aware of the

---

[6] The additional coverage for collapse provided in Admiral's 2000 policy is the same as that provided in Scottsdale's Policies -- which were in place during the 4 years preceding Admiral's 2000 policy. Therefore, if Wattles cannot prove the warehouse (which is still standing) "collapsed" during Admiral's policy periods, then it obviously cannot prove it "collapsed" during Scottsdale's policies, which were even earlier. Nevertheless, Scottsdale respectfully submits that the issue of "collapse" is irrelevant to this motion as Wattles' damages did not commence during Scottsdale's policies, Wattles did not timely file its lawsuit, the exclusions discussed herein are dispositive, and each exclusion is independently sufficient to warrant dismissal.

{TNG1250596.DOC;1/00335.001970/ }
SCOTTSDALE INSURANCE COMPANY'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 10  (3:14-05097-RBL)

OGDEN MURPHY WALLACE, P.L.L.C.
901 Fifth Avenue, Suite 3500
Seattle, Washington 98164-2008
Tel: 206.447.7000/Fax: 206.447.0215

damage. It is black-letter agency law that Wattles' agents' viewing or knowledge of damage is imputed onto Wattles. *See e.g., Puget Sound Nat. Bank v. St Paul Fire and Marine Ins. Co.*, 32 Wn. App. 32, 40 (1982) (*citing, Higgins v. Daniel*, 5 Wn.2d 134, 139 (1940)); *L.J. Dowell, Inc., v. United Pacific Cas. Ins. Co.*, 191 Wn. 666, 681 (1937).

Even if Wattles is given every possible benefit of the doubt, the alleged damage to its warehouse was not "hidden" by 2011 when Wattles' own experts observed and documented the damage. Thus, if the two-year suit limitation period began to run at that time, it expired 2 years later in 2013. Because Wattles did not file its lawsuit until February 2014, Wattles' breach of contract claims are time-barred and must be dismissed.

E. **Scottsdale's Pollution Exclusion Bars Wattles' Claims.**

The general rule that insurance policy exclusions are strictly construed against the insurer is merely an aid in determining the intention of the parties, strict application should not trump plain, clear language or result in a strained or forced construction. *City of Bremerton v. Harbor Ins. Co.*, 92 Wn. App. 17, 21 (1988). If the language of an exclusion is clear and unambiguous, the clause must be enforced as written, and a court cannot modify the contract or create ambiguity where none exist. *Id.* at 23. Unambiguous policy exclusions will be enforced by the courts. *Drollinger v. Safeco Ins. Co. of Am.*, 59 Wn. App. 383, 386 (1990).

Scottsdale's Policies contain the following pollution exclusion:

> B.   Exclusions.
> ...
> 2.   We will not pay for loss or damage caused by or resulting from any of the following:
> ...
> l.   Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss."

"Pollutants" is defined under the Scottsdale Policies as "*any solid, <u>liquid</u>, <u>gaseous</u> or thermal irritant or contaminant, including smoke, <u>vapor</u>, soot, fumes, <u>acids</u>, alkalis, <u>chemicals</u>*

{TNG1250596.DOC;1/00335.001970/ }
SCOTTSDALE INSURANCE COMPANY'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 11 (3:14-05097-RBL)

OGDEN MURPHY WALLACE, P.L.L.C.
901 Fifth Avenue, Suite 3500
Seattle, Washington 98164-2008
Tel: 206.447.7000/Fax: 206.447.0215

*and waste. Waste includes materials to be recycled, reconditioned or reclaimed.*" (*See* Grant Decl., at Ex. A-D) (emphasis added).

Washington Courts have applied similar exclusions with similar definitions in liability insurance policies, and have found them to be <u>unambiguous</u> and enforceable. *See e.g., Quadrant Co. v. American States Ins. Co.*, 154 Wn.2d 165 (2005); *Cook v. Evanson*, 81 Wn. App. 149 (1996). Some other jurisdictions have reached the same conclusion. *See, e.g, Nautilus Ins. Co. v. Country Oaks Apartments Ltd.*, 566 F.3d 452 (5th Cir. 2009)(Texas law); *Reed v. Auto-Owenrs Ins. Co.*, 667 S.E.2d 90 (Ga. 2008); *Firemen's Fund Ins. Co. of Wash. D.C. v. Kline & Son Cement Repair, Inc.*, 474 F.Supp.2d 779 (E.D.Va. 2007).

Here, pursuant to the Site Investigation Report prepared by Wattles' own experts, Farallon Consulting, the damage to the warehouse resulted from Exide's manufacturing operations of car batteries, which caused the dispersal of sulfuric acid into the air. They also detected other chemicals such as chromium, cadmium and lead. These chemicals are unquestionably "pollutants" as defined in Scottsdale's Policies. Indeed, both "acids" and "chemicals" are specifically and unambiguously identified as "pollutants". To be sure, sulfuric acid and sulfuric acid emissions have been determined to be excluded under other policies containing similar pollution exclusions. *See e.g., TravCo Ins. Co. v. Ward*, 736 S.E.2d 321 (Va. 2012); *TravCo Ins. Co. v. Ward*, 715 F.Supp.2d 699 (E.D. Va. 2010); *Ross v. C. Adams Const. & Design, LLC*, 70 So.3d 949, 955-6 (La.App. 2011)("The sulfuric gas emitted from the Rosses' drywall qualifies as a pollutant pursuant to this definition in the policy. Therefore, any damage caused by the release of these gases is excluded from coverage . . .").

Additionally, while Scottsdale's Polices contemplate coverage for the discharge or escape of "pollutants" if "the *discharge or escape is itself caused by any of the 'specified causes of loss*'", it is undisputed that the discharge of "pollutants" in this case was ***not*** caused by any "specified causes of loss" (e.g., fire, lightening, explosion, windstorm, etc.).[7] Therefore, the

---

[7] "Specified Causes of Loss" is defined in the Policies as: "Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole

{TNG1250596.DOC;1/00335.001970/ }
SCOTTSDALE INSURANCE COMPANY'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 12  (3:14-05097-RBL)

OGDEN MURPHY WALLACE, P.L.L.C.
901 Fifth Avenue, Suite 3500
Seattle, Washington 98164-2008
Tel: 206.447.7000/Fax: 206.447.0215

unambiguous pollution exclusion in the Scottsdale Policies bar Wattles' claims and Wattles' breach of contract claims should be dismissed accordingly.

F.  **Scottsdale's Policies Exclude Damage Caused by Wear, Tear, Corrosion, Decay, Deterioration and Gas or Vapor from Industrial Operations.[8]**

The Scottsdale Policies explicitly state that Scottsdale will not pay for loss or damage caused by or resulting from smoke, vapor or gas from agricultural smudging or industrial operations, wear and tear, corrosion, decay, deterioration, or hidden or latent defects. *See* Grant Decl., at Ex. A. Because Wattles itself asserts that these exact things caused its damages, Wattles' claims are not covered and its breach of contract claims against Scottsdale should be dismissed.

The Scottsdale Policies contain the following exclusions:

> B. EXCLUSIONS
> ...
> 2.  We will not pay for loss or damage caused by or resulting from any of the following:
> ...
> c. **Smoke, vapor or gas from agricultural smudging or industrial operations**.
>
> d. (1) **Wear and tear**;
>
> (2) Rust, **corrosion**, fungus, **decay, deterioration**, hidden or latent defect or any quality in property that causes it to damage or destroy itself;
>
> But if an excluded cause of loss that is listed in 2.d. (1) through (7) results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.
> ...
> F. DEFINITIONS
>
> "Specified Causes of Loss" means the following: Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

//

---

collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage." *See* T. Grant Decl., at Exs. A-D.

[8] In addition to the arguments and authorities set forth herein, Scottsdale also incorporates by this reference the briefing submitted by co-defendant Admiral Insurance Company in its Motion for Partial Summary Judgment (Dkt No. 89 at pg. 10-12) regarding the application of these same exclusions.

{TNG1250596.DOC;1/00335.001970/ }
SCOTTSDALE INSURANCE COMPANY'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 13  (3:14-05097-RBL)

OGDEN MURPHY WALLACE, P.L.L.C.
901 Fifth Avenue, Suite 3500
Seattle, Washington 98164-2008
Tel: 206.447.7000/Fax: 206.447.0215

i. *Wattles' breach of contract claims cannot survive where Scottsdale's Policies exclude coverage for damage caused by vapor or gas from industrial operations.*

As identified above, Scottsdale's Policies do not cover damage caused by smoke, vapor, or gas from industrial operations. Since the damage to Wattles' warehouse was caused by vapor or gas from Exide's industrial operations, the policies exclude coverage and Wattles claims should be dismissed.

Here, Wattles' own experts conclude that because Exide failed to maintain or install acid-mist scrubbers that would have effectively reduced acid mists in the warehouse, the release of these acid mists caused the dispersal of sulfuric acid throughout the air and spread acidic corrosives throughout the warehouse. *See* Dkt. No. 108 at Ex. 15, pg. 1-2 (Farallon Report) and Dkt. 90 at pg. 102 (EMB Report). Wattles' experts further conclude that these acid mists spread up to the roof of the warehouse, resulting in severe distress to the warehouse's wood-roof-framing elements and concrete surfaces. *Id.* at Ex. 15 and Ex. 5. Thus, there is, and can be, no dispute that the damage to the warehouse was caused by vapor or gas from Exide's industrial operations.

Wattles cannot avoid this exclusion by characterizing the source of the damage as "acid mists" rather than "gas" or "vapors."[9] *See Kish v. Ins. Co. of N. Am.*, 125 Wn.2d 164, 170 (1994) ("An insured may not avoid a contractual exclusion merely by affixing an additional label or separate characterization to the act or event causing the loss.") Because Scottsdale's Policies specifically exclude coverage for damage caused by vapor or gas from industrial operations, there is no coverage for the damages alleged by Wattles.

ii. *Wattles' breach of contract claims cannot survive where Scottsdale's Policies exclude coverage for damage caused by wear and tear, corrosion, decay, and deterioration.*

According to the Site Investigation Report prepared by Wattles' experts, Farallon Consulting, Exide's former operations at the warehouse resulted in the deterioration of the

---

[9] *See, e.g.*, WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 1304 (1991) (defining "vapor" as "a substance in the gaseous state as distinguished from the liquid or solid state").

{TNG1250596.DOC;1/00335.001970/ }
SCOTTSDALE INSURANCE COMPANY'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 14  (3:14-05097-RBL)

OGDEN MURPHY WALLACE, P.L.L.C.
901 Fifth Avenue, Suite 3500
Seattle, Washington 98164-2008
Tel: 206.447.7000/Fax: 206.447.0215

structural integrity of the warehouse, including distressed conditions of the building's structure and wood roof framing. Because Wattles' own experts describe the damage to the building in their reports as "corrosion,"[10] "degradation,"[11] and "deterioration,"[12] the alleged losses and damages are not covered under the unambiguous terms of the Scottsdale Policies. To be sure, Wattles' own experts explicitly identify (or employ synonyms for) the very perils excluded under Scottsdale's Policies.

In addition to Wattles' experts, Wattles itself characterizes the damage to the property as "wear and tear." First, the 1999 Lease Addendum states that the *"Landlord and Tenant agree that . . . the Premises has experienced extraordinary (i.e., beyond normal) **wear and tear** during the period of the prior Leases by virtue of the Tenant's activities on the Premises."* See Dkt. No. 108 at Ex. 6 pg. 10. Mr. Wattles testified that the terms "wear and tear" referred to the destruction caused by acid. See *id.*, Ex. 1 at 48:17-18; 43:22-24. Second, during Mr. Wattles' examination under oath he testified that the reason Wattles did not give notice of its claim to any of its insurers when it signed the Lease Addendum in 1999 was because the damage was *"considered to be a **wear-and-tear** item that Exide was taking responsibility to make whole at the end of the lease."* *Id.* at 57:12-19 (emphasis added). Finally, there is no evidence (or allegation) that any of the alleged damage resulted in a "specified causes of loss" (i.e., fire, lightening, windstorm, etc.). There is then, no genuine dispute that the damage alleged by Wattles was caused by wear and tear and the corrosion, degradation, and deterioration of building members. Therefore, Scottsdale's unambiguous exclusions for wear and tear, corrosion, decay, and deterioration bar Wattles' claims.

## VI. CONCLUSION

Based on the above and foregoing, Scottsdale respectfully requests the Court grant its Motion for Summary Judgment and dismiss Wattles' breach of contract claims. Wattles' claims

---

[10] *See* Dkt. 108 at Ex. 5 (WJE Report).
[11] *Id.*
[12] *Id.*

{TNG1250596.DOC;1/00335.001970/ }
SCOTTSDALE INSURANCE COMPANY'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 15  (3:14-05097-RBL)

OGDEN MURPHY WALLACE, P.L.L.C.
901 Fifth Avenue, Suite 3500
Seattle, Washington 98164-2008
Tel: 206.447.7000/Fax: 206.447.0215

should be dismissed because the first party property insurance policies issued by Scottsdale do not provide coverage for Wattles' alleged losses and/or contain explicit exclusions or terms that bar Wattles' claims. Under these circumstances, there are no genuine issues of material fact for trial and summary judgment dismissal is warranted.

## VII. ORDER

A proposed Order is attached.

DATED this 26th day of November, 2014.

OGDEN MURPHY WALLACE, P.L.L.C.

By: /s/ Geoff Bridgman
Geoff Bridgman, WSBA #25242
Tracy Grant, WSBA #40877
901 Fifth Avenue, Suite 3500
Seattle, Washington 98164-2008
Tel: 206.447.7000/Fax: 206.447.0215
Attorneys for Defendant Scottsdale

{TNG1250596.DOC;1/00335.001970/ }
SCOTTSDALE INSURANCE COMPANY'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 16  (3:14-05097-RBL)

OGDEN MURPHY WALLACE, P.L.L.C.
901 Fifth Avenue, Suite 3500
Seattle, Washington 98164-2008
Tel: 206.447.7000/Fax: 206.447.0215

# DECLARATION OF SERVICE

I, Sheryl Bordeaux, hereby declare as follows:

1. I am over the age of eighteen years and not a party to the within action. My business address is 901 Fifth Avenue, Suite 3500, Seattle, Washington 98164.

2. On November 26, 2014, I served by the method and with the exceptions set forth below upon counsel of record at the addresses and in the manner described below, true and correct copies of the foregoing document:

| Attorney for Plaintiff<br><br>Brent J. Hardy<br>Devon Thurtle Anderson<br>Heffernan Law Group PLLC<br>1201 Market St.<br>Kirkland, WA  98033<br>425.284.1150<br>brent@heffernanlawgroup.com<br>devon@heffernanlawgroup.com<br>jaimie@heffernanlawlawgroup.com | [ ] U.S. Mail<br>[ ] Messenger<br>[ ] Email<br>[ ] Facsimile<br>[X] CM/ECF |
|---|---|
| **Attorney for Defendant Transamerica Insurance Company**<br><br>David Schoeggel<br>Stephanie Denton<br>Jennifer Sheffield<br>Lane Powell, PC<br>1420 Fifth Avenue, Suite 4200<br>Seattle, WA  98101<br>206.223.7000<br>dentons@lanepowell.com<br>schoeggld@lanpowell.com<br>nichols@lanepowell.com<br>vanburenh@lanepowell.com<br>sheffieldj@lanepowell.com | [ ] U.S. Mail<br>[ ] Messenger<br>[ ] Email<br>[ ] Facsimile<br>[X] CM/ECF |

{TNG1250596.DOC;1/00335.001970/ }
SCOTTSDALE INSURANCE COMPANY'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 17  (3:14-05097-RBL)

OGDEN MURPHY WALLACE, P.L.L.C.
901 Fifth Avenue, Suite 3500
Seattle, Washington 98164-2008
Tel: 206.447.7000/Fax: 206.447.0215

| | |
|---|---|
| **Attorney for Defendant Northfield Insurance Company**<br><br>James Derrig<br>14419 Greenwood Avenue N.<br>Suite A-372<br>Seattle, WA 98133-6867<br>206.414.7228<br>eservice.derriglaw@me.com | [ ] U.S. Mail<br>[ ] Messenger<br>[ ] Email<br>[ ] Facsimile<br>[X] CM/ECF |
| **Attorney for Defendant Westchester Fire Ins. Company; Westchester Surplus Lines Insurance Company; Century Indemnity Insurance Company; and Industrial Insurance of Hawaii**<br><br>Alfred E. Donohue<br>Maria E. Sotirhos<br>Scott Stickney<br>Robert C. Levin<br>Wilson Smith Cochran & Dickerson<br>901 Fifth Avenue, Suite 1700<br>Seattle, WA 98164-2050<br>206.623.4100<br>sotirhos@wscd.com<br>donohue@wscd.com<br>stickney@wscd.com<br>levin@wscd.com<br>obrien@wscd.com<br>strelyuk@wscd.com<br>ossenkop@wscd.com<br>phares@wscd.com | [ ] U.S. Mail<br>[ ] Messenger<br>[ ] Email<br>[ ] Facsimile<br>[X] CM/ECF |
| **Attorney for Defendant AGCS Marine Insurance Company and Firemans Fund Insurance Company**<br><br>Joseph Hampton<br>Daniel L. Syhre<br>Betts Patterson & Mines<br>701 Pike St., Suite 1400<br>Seattle, WA 98101-3927<br>206.292.9988<br>dsyhre@bpmlaw.com<br>jhampton@bpmlaw.com<br>dmarsh@bpmlaw.com<br>kfortune@bpmlaw.com<br>aklein@bpmlaw.com | [ ] U.S. Mail<br>[ ] Messenger<br>[ ] Email<br>[ ] Facsimile<br>[X] CM/ECF |

{TNG1250596.DOC;1/00335.001970/ }
SCOTTSDALE INSURANCE COMPANY'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 18  (3:14-05097-RBL)

OGDEN MURPHY WALLACE, P.L.L.C.
901 Fifth Avenue, Suite 3500
Seattle, Washington 98164-2008
Tel: 206.447.7000/Fax: 206.447.0215

| Attorneys for Admiral Insurance Company | [ ] U.S. Mail |
|---|---|
| John Bennett<br>Bullivant Houser Bailey<br>888 S.W. Fifth Avenue, Suite 300<br>Portland, OR 97204<br>503.499.4418<br><br>Daniel Rahn Bentson<br>Bullivant Houser Bailey<br>1700 Seventh Avenue, Suite 1800<br>Seattle, WA 98101<br>206.292.8930<br>john.bennett@bullivant.com<br>danbentson@bullivant.com<br>trask.russell@bullivant.com | [ ] Messenger<br>[ ] Email<br>[ ] Facsimile<br>[ X ] CM/ECF |

I declare under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct.

Signed this 26th day of November, 2014 at Seattle, Washington.

By: _____
Sheryl Bordeaux, Declarant

{TNG1250596.DOC;1/00335.001970/ }
SCOTTSDALE INSURANCE COMPANY'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 19  (3:14-05097-RBL)

OGDEN MURPHY WALLACE, P.L.L.C.
901 Fifth Avenue, Suite 3500
Seattle, Washington 98164-2008
Tel: 206.447.7000/Fax: 206.447.0215