THE HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| THE WATTLES COMPANY, a Washington corporation, <br><br> Plaintiff, <br><br> v. <br><br> SCOTTSDALE INSURANCE COMPANY; et al., <br><br> Defendants. | Case No. 3:14-CV-05097-RBL <br><br> TIG INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT <br><br> NOTE ON MOTION CALENDAR: FRIDAY, DECEMBER 26, 2014 |

## I. INTRODUCTION & RELIEF REQUESTED

Defendant TIG Insurance Company ("TIG"), by and through its counsel of record, Lane Powell PC, moves for Summary Judgment pursuant to Fed. R. Civ. P. 56. All breach of contract claims asserted by Plaintiff The Wattles Company ("Wattles") against TIG must be dismissed with prejudice and without leave to amend based on any *one* of the following grounds:

1) The TIG policies provide coverage only for "loss or damage commencing during the policy period." Here, there is no evidence the presently claimed damage commenced during the TIG coverage period. Rather, by Wattles' own admission, the property damage claimed in this lawsuit (i.e., structural damage to the Sumner Warehouse) was caused by Exide's manufacturing activities, which undisputedly commenced on or around August 11, 1981—more than seven (7) years before the first TIG policy incepted.

TIG'S MOTION FOR PARTIAL SUMMARY
JUDGMENT - 1
Case No. 3:14-CV-05097-RBL

121711.0002/6216734.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000  FAX: 206.223.7107

      2)     Even if damage to the Sumner Warehouse commenced during one or more of the TIG policy periods (1988-1992), coverage is precluded by the following exclusions:

         a.     The "wear and tear" exclusion;

         b.     The "corrosion or deterioration" exclusion; and

         c.     The "vapor or gas from industrial operations" exclusion.

In 2011, Wattles' expert inspected the premises and concluded that "known areas of sulfuric acid use from the battery manufacturing operations correlate to the most severe observed distress to building elements;" "[c]orrosion product accumulations are ongoing and still continue to accumulate;" "observed building elements with charred wood surfaces . . . are consistent with the effects from sulfate attack;" and "chemicals used within the warehouse have affected, and continue to affect, the building structural and non-structural elements." Similarly, it is undisputed that Wattles executed a 1999 Lease Addendum with Exide, acknowledging that Exide's operations resulted in extraordinary wear and tear to the Sumner Warehouse. Based on the undisputed evidence before this Court, Wattles' claimed damages plainly fall within any one of these exclusions.

      3)     Further, Wattles is not entitled to "collapse" coverage under the TIG policies, as Wattles has offered no evidence that the Sumner Warehouse collapsed or sustained substantial impairment of structural integrity during the TIG policy periods. It is undisputed that the Sumner Warehouse is still standing today and has not collapsed in the twenty two (22) years since the final TIG policy expired. It also is undisputed that Wattles' tenant, Exide, continued to carry out its battery manufacturing operations for an additional seventeen (17) years following expiration of the last TIG policy.

      4)     Lastly, the TIG policies' two-year suit limitation provision precludes coverage for Wattles' insurance claim.

TIG'S MOTION FOR PARTIAL SUMMARY
JUDGMENT - 2
Case No. 3:14-CV-05097-RBL
121711.0002/6216734.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000  FAX: 206.223.7107

For any one of these reasons, TIG is entitled to summary judgment and an order dismissing Wattles' breach of contract claims against the TIG policies.[1]

## II. STATEMENT OF FACTS

In order to avoid duplication, defendants Northfield Insurance Company, Scottsdale, AGCS, Fireman's Fund and TIG have prepared and submitted a Joint Statement of Common Facts, which sets forth the facts relevant to the insurers' respective summary judgment motions. (Dkt. 110.) TIG incorporates by reference Defendants' Joint Statement of Common Facts and the Declaration of James T. Derrig, with exhibits. (Dkt. 108 & 110.) For convenience, the working papers submitted to the Court by TIG include a copy of these documents.

### A. TIG Issued Commercial Property Insurance Policies to Wattles.

Between 1988 and 1994, TIG issued the following property insurance policies to Wattles:

- TIG policy number T730305511, effective from November 1, 1988 to November 1, 1989;

- TIG policy number T730797373, effective from November 1, 1989 to November 1, 1990;

- TIG policy number T730812242, effective from November 1, 1990 to November 1, 1991 and November 1, 1991 to November 1, 1992;

- TIG policy number T731343096, effective from November 1, 1993 to November 1, 1994.

(Dkt. 3 at ¶ 14.) On September 16, 2014, the Court dismissed all claims asserted against TIG policy number T731343096. (Dkt. 95.)

The TIG policies contain identical language with respect to the policy terms, conditions and exclusions at issue in the present motion. A true and correct copy of TIG's policy language is attached to the Declaration of Jennifer K. Sheffield ("Sheffield Decl.") as Exhibit A. Pertinent policy language is quoted below in Section IV.

---

[1] This motion does not address Wattles' extra-contractual claims against TIG, and TIG reserves its right to address these claims by separate motion.

TIG'S MOTION FOR PARTIAL SUMMARY
JUDGMENT - 3
Case No. 3:14-CV-05097-RBL

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

121711.0002/6216734.1

## III. EVIDENCE RELIED UPON

This motion relies upon the Joint Statement of Common Facts By Defendants Northfield, Scottsdale, AGCS, Fireman's Fund and TIG (Dkt. 110); the Declaration of James T. Derrig in Support of the Joint Statement of Common Facts and the exhibits attached thereto (Dkt. 108); the Declaration of Jennifer K. Sheffield and the exhibit attached thereto; and the pleadings and papers on file in this action.

TIG also relies upon and incorporates by reference Admiral's Motion for Summary Judgment with respect to the contractual suit limitation and collapse coverage provisions. TIG's suit limitation and collapse provisions are identical.

## IV. LEGAL ARGUMENT

A.  **Summary Judgment Standard and Policy Interpretation.**

On a motion for summary judgment under Federal Rule of Civil Procedure 56, the court must draw all inferences from the admissible evidence in the light most favorable to the non-moving party. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party must initially show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The opposing party must then show a genuine issue of fact for trial. *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).

Determining whether coverage exists is a two-step process. The insured must show that the loss falls within the scope of the policy's insured losses. Thereafter, to avoid coverage, the insurer must show that the loss is excluded by specific policy language. *McDonald v. State Farm Fire & Casualty Company,* 119 Wn.2d 724, 730, 837 P.2d 1000 (1992). An insurance policy is a contract and should be construed as such. *Teague Motor Co. v. Federated Service Ins. Co.*, 73 Wn. App. 479, 482, 869 P.2d 1130 (1994). The interpretation of an insurance

TIG'S MOTION FOR PARTIAL SUMMARY
JUDGMENT - 4
Case No. 3:14-CV-05097-RBL
121711.0002/6216734.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

policy is a matter of law. *Drollinger v. Safeco Ins. Co. of Am.*, 59 Wn. App. 383, 386 797 P.2d 540 (1990). The policy should be given a fair, reasonable, and sensible construction, consistent with the apparent object and intent of the parties. *Teague*, 73 Wn. App. at 482.

The general rule that insurance policy exclusions are strictly construed against the insurer is merely an aid in determining the intention of the parties; strict application should not trump plain, clear language resulting in a strained or forced construction. *City of Bremerton v. Harbor Ins. Co.*, 92 Wn. App. 17, 21, 963 P.2d 194 (1988). If the language of an exclusion is clear and unambiguous, the clause must be enforced as written, and the court cannot modify the contract or create ambiguity where none exists. *Id.* at 23.

**B.     Property Damage Did Not Commence During Any of the TIG Policy Periods.**

The TIG policies provide coverage for property damage that commences during the policy period:

> H.     POLICY PERIOD, COVERAGE TERRITORY
>
> Under this Coverage Part:
>
> 1.     We cover loss or damage commencing:
>         a.     During the policy period shown in the Declarations; and
>         b.     Within the coverage territory.

(Sheffield Decl., Ex. A at TIG 100211.)

Courts have construed this policy provision as limiting coverage to damage that commenced while the policy was in effect. *See Ellis Court Apartments Ltd. Partnership v. State Farm Fire & Cas. Co.*, 117 Wn. App. 807, 814-16, 72 P.3d 1086 (2003) (adopting *Kief Farmers Co-op. Elevator Co. v. Farmland Mut. Ins. Co.*, 534 N.W.2d 28, 35 (N.D. 1995)); *see also General Star Indem. Co. v. Sherry Brooke Revocable Trust*, 243 F. Supp. 2d 605, 629 (W.D. Tex. 2001) ("If a loss did not 'commence' during General Star's policy period, General Star is not liable under its policy of insurance."). These courts explain that the term "commence" means to "begin, start, originate." *Ellis Court*, 117 Wn. App. at 813, 816; *Kief*, 534 N.W.2d at 35. "Commence refers to the time the damage first began." *Ellis*, 117 Wn. App. at 814. The burden of proving damage commenced or began during the policy period is

TIG'S MOTION FOR PARTIAL SUMMARY
JUDGMENT - 5
Case No. 3:14-CV-05097-RBL
121711.0002/6216734.1

on the insured. *See Overton v. Consolidated Ins. Co.*, 145 Wn.2d 417, 431, 38 P.3d 322, 329 (2002); *Schwindt v. Underwriters at Lloyd's of London*, 81 Wn. App. 293, 298, 914 P.2d 119, 122 (1996) ("[t]he insured must show the loss falls within the scope of the policy's insured losses").

By Wattles' own admission, the property damage claimed in this lawsuit (i.e., structural damage to the Sumner warehouse) was caused by Exide's manufacturing activities, which commenced on or around August 11, 1981. (Dkt. 110 at 1; Dkt. 108-12 at ¶¶ 3.3-3.30.) It is undisputed that the first TIG policy incepted on November 1, 1988—seven (7) years after Exide began its battery manufacturing activities at the Sumner warehouse. (*Compare* Dkt. 108-12 at ¶ 3.4, *with* Dkt. 3 at ¶ 14.) Discovery by the parties has not revealed a shred of evidence that the property damage claimed by Wattles commenced, began or originated during TIG's policy periods. Thus, summary judgment is proper, and Wattles' breach of contract claims against the TIG policies must be dismissed with prejudice.

C.  **The TIG Policies Contain Several Exclusions Precluding Coverage for Damages Caused by Exide's Manufacturing Operations.**

Even if Wattles can establish that the loss commenced during the TIG policy periods, the property damage is not covered due to application or one or more policy exclusions. *See Overton*, 145 Wn.2d at 431, 38 P.3d at 329. "Each exclusion is to be read independently of the other exclusions, and exclusions need not be harmonized with one another." *Bunch v. Nationwide Mut. Ins. Co.*, Case No. C12-1238-JLR, 2014 WL 172261 (W.D. Wash. Jan. 15, 2014) (explaining that "In Washington, exclusions in insurance contracts work like shots fired from a gun: each must be analyzed independently to determine if a fatal blow has been delivered."); *Harrison Plumbing & Heating, Inc. v. New Hampshire Ins. Grp.*, 37 Wn. App. 621, 627, 681 P.2d 875, 880 (1984). Thus, if a single exclusion applies, the loss is excluded. *Id.*

TIG'S MOTION FOR PARTIAL SUMMARY
JUDGMENT - 6
Case No. 3:14-CV-05097-RBL

121711.0002/6216734.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

1.      **The TIG Policies Exclude Coverage for Damage Caused by Wear and Tear.**

The TIG Policies exclude coverage for loss or damage caused by or resulting from "wear and tear."[2] (Sheffield Decl., Ex. A at TIG 100223.) The phrase wear and tear applies to the "<u>gradual deterioration resulting from use</u>, lapse of time, and to a certain extent to the operation of the elements . . . but [does] not cover destruction, in whole or in part, of a structure by some sudden catastrophe." *Publishers Bldg. Co. v. Miller*, 25 Wn.2d 927, 939, 172 P.2d 489 (1946) (emphasis added). Wear and tear results from normal and ordinary operation. *See, e.g.*, *Meridian Leasing v. Assoc. Aviation Underwriters*, 409 F.3d 342, 353 (6th Cir. 2005) (holding that the "wear and tear" exclusion does not apply to accidental and fortuitous occurrences).

Undisputedly, the warehouse has experienced "wear and tear" over the course of Exide's nearly thirty-year (30) lease—a fact conceded by Wattles and its experts. For instance, in his Examination Under Oath, Craig Wattles testified that the "damage to the floor we considered to be a wear-and-tear item that Exide was taking responsibility to make whole at the end of the lease." (Dkt. 108-1 at p.57.) Mr. Wattles further testified that the warehouse floor was "almost a consumable of the manufacturing process, that they just knew the flooring, concrete, would have to be released." (*Id.* at p.55.) To that end, Wattles and Exide executed a 1999 Lease Addendum that specifically contemplated Exide remediating the property at the end of the lease due to "wear and tear" caused by its operations. (Dkt. 108-6 at p.10.) Similarly, Wattles' experts have concluded that the damage alleged by Wattles was caused by Exide's use of the building for battery manufacturing operations. (Dkt. 108-10 at p.1; Dkt. 108-5 at p.3, stating "We find that the known areas of sulfuric acid use from the battery manufacturing operations correlate to the most severe observed distress to building elements.") There is simply no evidence to suggest that the damage is the result of a sudden catastrophe or fortuitous

---

[2] The TIG policies provide that this exclusion does not apply if the wear and tear results in a "specified cause of loss," building glass breakage or collapse. (Sheffield Decl., Ex. A at TIG 100223.) However, as set forth in Section IV.D, Wattles cannot establish that the Sumner Warehouse collapsed or was in an "imminent state of collapse" during the TIG policy periods. Moreover, there is no evidence of building glass breakage or a specified cause of loss," which includes fire, lightning, explosion, vandalism, etc.

TIG'S MOTION FOR PARTIAL SUMMARY
JUDGMENT - 7
Case No. 3:14-CV-05097-RBL

121711.0002/6216734.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

event, rather than wear and tear caused by Exide's normal and ordinary use of the Sumner Warehouse. Accordingly, TIG is entitled to summary judgment dismissing Wattles' breach of contract claims against the TIG policies, as there is no coverage for damage or loss caused by wear and tear.

    **2.    The TIG Policies Exclude Coverage for Damage Caused by Corrosion or Deterioration.**

The TIG Policies also exclude coverage for damage caused by rust, corrosion, decay or deterioration:

> We will not pay for loss or damage caused by or resulting from any of the following:
>
>    \*     \*     \*
>
> (2)    Rust, corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself[.][3]

(Sheffield Decl., Ex. A at TIG 100223.) Notably, courts have held that damage from a sulfuric acid attack is excluded as "corrosion." *See, e.g., Arkwright-Boston Manuf. Mut. Ins. Co. v. Wausau Paper Mills Co.*, 818 F.2d 591, 594 (7th Cir. 1987); *TravCo Ins. Co. v. Ward*, 715 F. Supp. 2d 699, 714 (E.D. Va. 2010); *In re Chinese Manufactured Drywall Products Liability Litigation*, 759 F. Supp. 2d 822, 846-47 (E.D. La. 2010). Courts also have held that degradation of building materials from long-term chemical exposure qualifies as deterioration. *See, e.g., Jardine v. Maryland Cas. Co.*, 823 F. Supp. 2d 955, 961 (N.D. Cal. 2011), *aff'd*, 532 Fed. Appx. 662 (9th Cir. 2013) (sulfur exposure); *Alex R. Thomas & Co. v. Mutual Service Cas. Ins. Co.*, 119 Cal. Rptr. 2d 394, 399 (Ct. App. 2002) (chlorine exposure). Thus, to the extent that either corrosion *or* deterioration damaged the Sumner Warehouse, the TIG policies do not provide coverage.

Wattles' own experts identify the Warehouse damage as "corrosion" and "deterioration." For instance, Wattles' expert Wiss Janney Elstner ("WJE") opines that:

---

[3] Like the "wear and tear" exclusion, this exclusion does not apply if the rust, corrosion, decay or deterioration results in a "specified cause of loss", building glass breakage or collapse. (Sheffield Decl., Ex. A at TIG 100223.) *See supra* n.2.

TIG'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 8
Case No. 3:14-CV-05097-RBL
121711.0002/6216734.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

- **Corrosion product accumulations** are ongoing and continue to accumulate on the top portion of the concrete slab replaced by Exide after terminating manufacturing operations and vacating the site.

- Concrete sample analysis finds cement paste contains variable amounts of sulfur, and the concrete slab surface distress is consistent with **sulfuric acid attack**.

- **Corrosive chemicals**, including sulfuric acid, were used in the facility during the years of battery manufacturing. Based upon the evidence examined, the chemicals used within the warehouse [by Exide] have affected, and continue to affect, the building structural and non-structural.

- Known areas of sulfuric acid use from the battery manufacturing operations correlate to the most severe observed distress to building elements. . . . The settled dust accumulations are **corrosion products**.

(Dkt. 108-5 at pp. 3-4, 12.) Similarly, Wattles' expert EMB Consulting, LLC ("EMB") provided Wattles with the following opinions:

- Acidic pH dust is a source of ongoing **corrosion of building materials** and may also be related to the detection of sulfuric acid in air during the assessment.

- The zinc in air at the Site is a result of ongoing **corrosion and degradation** of building materials. The highest concentrations of metals were detected in settled dust samples collected by EMB in the northeast corner of the Site, where battery assembly and charging occurred during former Exide operations.

(*Id.* at p. 2.) Farallon, another Wattles expert, opined that "Site conditions began to deteriorate beginning early in Exide's occupancy of the Site and continued," and concluded that Wattles' damages were "due to potentially unsafe structural and environmental conditions that are directly related to Exide's former operations." (Dkt. 108-16 at p.10.)

Accordingly, there can be no genuine dispute that the damage alleged by Wattles is the "corrosion" and "deterioration" of building members, caused by acid and chemicals from Exide's battery manufacturing operations. Because the TIG policies expressly preclude coverage for this type of damage, Wattles' claim for property damage is not covered.

TIG'S MOTION FOR PARTIAL SUMMARY
JUDGMENT - 9
Case No. 3:14-CV-05097-RBL
121711.0002/6216734.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000  FAX: 206.223.7107

3.    **Coverage is Excluded for Damages Caused by Vapor or Gas from Industrial Operations.**

Finally, and alternatively, the TIG policies preclude coverage for damage caused by vapor or gas from industrial operations:

> We will not pay for loss or damage caused by or resulting from any of the following:
>
> *   *   *
>
> c.   Smoke, vapor or gas from agricultural smudging or industrial operations.

(Sheffield Decl., Ex. A at TIG 100225.) The TIG policies do not define "vapor" or "industrial operations." (*Id.*) Consistent with longstanding principles in Washington, undefined terms in a policy will be given their plain, ordinary, and popular meaning, generally based on standard English language dictionaries. *Queen City Farms v. Central National Ins. Co.*, 126 Wn.2d 50, 66, 77, 882 P.2d 703 (1994). "Industrial" means "of, pertaining to, or derived from industry." *The American Heritage Dictionary of the English Language New College Edition* at 672 (1981). "Industry" is defined as: "the commercial production and sale of goods and services." (*Id.*) The dictionary defines "vapor" as: "[a]ny barely, visible or cloudy diffused matter, such as **mist**, fumes, or smoke suspended in the air." (*Id.* at 1416; emphasis added).

As noted above in Sections IV.C.1 and 2, Wattles' experts have consistently opined that the claimed damage to the Sumner Warehouse was caused by Exide's industrial operations and use of corrosive chemicals. These experts have further opined that "sulfuric acid mist" released in the course of Exide's battery manufacturing operations caused structural damage to the Sumner Warehouse. For instance, WJE concluded that:

- **Corrosive chemicals, including sulfuric acid, were used in the facility during the years of battery manufacturing**. Based upon the evidence examined, **the chemical used within the warehouse [by Exide] have affected, and continue to affect, the building structural and non-structural.**

- Known areas of **sulfuric acid use from the battery manufacturing operations** correlate to the most severe observed distress to building elements. The settled dust accumulations are corrosion products.

TIG'S MOTION FOR PARTIAL SUMMARY
JUDGMENT - 10
Case No. 3:14-CV-05097-RBL

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

121711.0002/6216734.1

- It is clear that **chemicals used within the warehouse** have affected, and continue to affect, the building structural and non-structural elements.

(Dkt. 108-5 at p.3-4, 12; emphasis added.) The Farallon Report similarly notes that Exide failed to maintain or install acid-mist scrubbers that would effectively reduce acid mists in the Sumner Warehouse. (Dkt. 108-15 at p.5, 13; Dkt. 108-16 at p.1-2, 8-9.) Ultimately, the release of these acid mists caused acidic corrosives to spread throughout the building causing severe distress. (*Id.*)

Considering the evidence in the light most favorable to the nonmoving party (*i.e., accepting the conclusions of Wattles' experts as true*), there can be no genuine issue of material fact that the damages claimed by Wattles was caused by vapors and/or gases from Exide's industrial operations. Thus, there is no coverage under the TIG policies.

### D. The TIG Policies' Collapse Coverage Does Not Apply Where the Building is Still Standing 22 Years after the Last TIG Policy Expired.

Wattles will likely argue that its insurance claim is covered under the "Additional Coverage-Collapse" provision. Admittedly, the TIG policies provide coverage for "loss or damage caused by or resulting from risks of direct physical loss involving collapse of a building or any part of a building caused only by one or more of the following . . . hidden decay[.]" (Sheffield Decl., Ex. A at TIG 100228.) However, this provision cannot salvage Wattles' insurance claim, as the Sumner Warehouse did not collapse during TIG's policy periods.

Application of the collapse provision has been amply briefed in Westchester's, Admiral's and Northfield's pending motions (Dkt. 75, 89 and 111), which TIG incorporates herein by reference.[4] TIG supplements briefing on this issue to highlight a recent decision, which is directly analogous to the facts presented in this matter. In a 2013 decision, the Western District of Washington concluded **as a matter of law** that an insured's claim is not

---

[4] TIG's collapse provision is identical to the policy language of the other Moving Defendant-Insurers.

TIG'S MOTION FOR PARTIAL SUMMARY
JUDGMENT - 11
Case No. 3:14-CV-05097-RBL
121711.0002/6216734.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

covered by the collapse provision where the building is still standing nine (9) years after the policy expired:

> Plaintiff will be unable to show coverage for collapse because the . . . policy period ended in 2002 and the damage was not discovered until 2011. In order to show collapse, Plaintiff must establish substantial impairment and an imminent threat of collapse. Because almost nine years elapsed between the end of coverage and discovery of damage, Plaintiff cannot show imminent collapse as a matter of law.

*Siena Del Lago Condo Assoc. v. American Fire & Cas. Co.*, 2013 WL 2127137 at n.4 (W.D. Wash. May 14, 2013) (internal citations omitted). The present case is factually indistinguishable from *Siena Del Lago*. In fact, the record before this Court provides better reasons for denying collapse coverage under the TIG policies because it is undisputed that the Sumner Warehouse is still standing and has not collapsed in the **twenty two (22) years** since the final TIG policy expired. It also is undisputed that Wattles' tenant, Exide, continued to carry out its battery manufacturing operations for an additional seventeen (17) years following expiration of the last TIG policy. Wattles has not presented any evidence that the Sumner Warehouse collapsed or sustained substantial impairment of structural integrity during the TIG policy periods.[5] Accordingly, Wattles' breach of contract claims against the TIG policies must be dismissed with prejudice.

E. **Wattles' Claim is Barred By the Two-Year Suit Limitation Provision, as Wattles Had Notice of Its Loss By 2011 at the Latest.**

The undisputed facts before the Court demonstrate that Wattles had notice of its loss (i.e., damage to the Sumner Warehouse) by 2011 at the latest, and certainly well before two years prior to filing the instant action. In late 2010 and into early 2011, Wattles observed a significant truss break and concrete staining at the Sumner Warehouse. (Dkt. 108-1 at p.41-

---

[5] Washington courts have not expressly determined whether a policy providing coverage for "collapse" requires that the structure actually fall to the ground or if substantial impairment of structure integrity will suffice. *See, e.g., Sprague v. Safeco Ins. Co. of America*, 174 Wn.2d 524, 276 P.3d 1270 (2012) (The five-justice majority expressly declined to address what constitutes "collapse" under Washington law). The Ninth Circuit recently certified this question to the Washington Supreme Court. *Queen Anne Park Homeowners Assoc. v. State Farm Fire & Cas. Co.*, 763 F.3d 1232, 1235 (9th Cir. Aug. 19, 2014). This issue is not material to the instant motion, however, because Wattles cannot prove covered damage even if the lesser "substantial impairment of structural integrity" standard is applied; there is no evidence of "substantial impairment of structural integrity" or "imminent collapse" during the TIG policy periods.

TIG'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 12
Case No. 3:14-CV-05097-RBL
121711.0002/6216734.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000  FAX: 206.223.7107

43.) In response, Wattles hired Environmental Management Services ("EMS") to assess any damage to the Sumner Warehouse caused by Exide's battery manufacturing operations in January 2011. (Dkt. 108-7.) In 2011, EMS noted "visual observations" of "extreme staining and pitting of the cement floor and walls of the building." (Dkt. 108-7 at p. 2.) EMS inspected the roof system via scissor lift and found that several trusses were "burned/charred;" that "[a]ll of the metal truss plates and rivets exhibited extreme corrosion;" and that the low pH levels posed a "problem for the structural integrity of the building." (*Id.* at p. 3.) A site visit by WJE in August 2011 confirmed the corrosion and distressed wood framing at the Sumner Warehouse. Armed with this information, Wattles sent three demand letters to Exide, along with a draft complaint, threatening to sue Exide for the damage it caused to the Sumner Warehouse. (Dkt. 108-8; Dkt. 90 at p.216, 219, 221.)

Each of the TIG policies contains a suit-limitation provision, which prohibits the insured from suing TIG more than two years after the date the physical damage to the property occurred:

> No one may bring a legal action against us under this Coverage Part unless:
>
> \*     \*     \*
>
> 2. The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

(Sheffield Decl., Ex. A at TIG 100211.) This provision is identical to the one discussed in Admiral's pending Motion for Partial Summary Judgment. (Dkt. 89 at p.20.) Application of the contractual suit limitation provision has been amply briefed in Admiral's motion, which TIG incorporates herein by reference. There can be no real dispute that the claimed direct physical loss and damage to the Sumner Warehouse existed prior to 2011—and well more than two years before Wattles filed the present suit against its insurers in February 2014.

Wattles will likely argue that a "discovery" rule applies to the suit limitation provision, and that it did not fully discover the extent of the damage to the Sumner Warehouse until 2013. This argument is unavailing. First, for the reasons set forth in Admiral's motion and reply

TIG'S MOTION FOR PARTIAL SUMMARY
JUDGMENT - 13
Case No. 3:14-CV-05097-RBL
121711.0002/6216734.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000  FAX: 206.223.7107

briefing, which TIG herein joins, the discovery rule does not apply to the suit limitation provision. And second, even if the discovery rule did apply, the rule cannot rescue Wattles' claim on these facts. Wattles unquestionably knew of substantial damage to the Sumner Warehouse in 2011 and had enough knowledge to threaten Exide with a lawsuit. In fact, Craig Wattles admitted in his examination under oath that the damage he previously sought against Exide is the same damage he currently seeks against Wattles' property insurers. (Dkt. 108-1 at 61:11-17.) Thus, Wattles' position that it had to uncover every inch of damage to the Sumner Warehouse is preposterous and unsupported by Washington law. Wattles cannot reasonably maintain that it lacked knowledge of its loss in 2011.

Where Wattles has no reasonable expectation of establishing the applicability of the discovery rule, TIG respectfully requests that the Court grant TIG's motion.

## V. CONCLUSION

For the foregoing reasons, TIG asks that the Court grant its summary judgment motion and dismiss Wattles' breach of contract claims against the remaining TIG policies with prejudice and without leave to amend.

DATED this 1st day of December, 2014.

LANE POWELL PC


By: /s/ Jennifer K. Sheffield
    David M. Schoeggl, WSBA No. 13638
    Stephania C. Denton, WSBA No. 21920
    Jennifer K. Sheffield, WSBA No. 41929
    Attorneys for Defendant TIG Insurance Company
    Lane Powell PC
    1420 Fifth Ave., Suite 4200
    Seattle, WA 98111
    Telephone: (206) 223-7000
    Facsimile: (206) 223-7107
    schoeggld@lanepowell.com
    dentons@lanepowell.com
    sheffieldj@lanepowell.com

TIG'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 14
Case No. 3:14-CV-05097-RBL

121711.0002/6216734.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

# CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to:

| *Attorneys for Plaintiff The Wattles Company:* | *Attorneys for Defendant Scottsdale Insurance Company* |
|---|---|
| Devon M. Thurtle Anderson<br>Brent J. Hardy<br>Heffernan Law Group PLLC<br>1201 Market Street<br>Kirkland, WA 98033<br>425-284-1150<br>devon@heffernanlawgroup.com<br>brent@heffernanlawgroup.com<br>Jaimie@heffernanlawgroup.com | Geoff Bridgman<br>Tracy N. Grant<br>Emily Gant<br>Ogden Murphy Wallace, P.L.L.C.<br>901 Fifth Avenue, Suite 3500<br>Seattle, WA 98164-2008<br>Tel: 206-447-0215<br>gbridgman@omwlaw.com<br>tgrant@omwlaw.com<br>mwhipple@omwlaw.com<br>tthompson@omwlaw.com<br>sbordeaux@omwlaw.com |
| *Attorneys for Defendants Westchester Fire Insurance Company and Westchester Surplus Lines Insurance Company*<br><br>Scott M. Stickney<br>Rob Levin<br>Wilson Smith Cochran Dickerson<br>901 Fifth Avenue, Suite 1700<br>Seattle, WA 98164<br>Tel:206-623-4100<br>stickney@wscd.com<br>Levin@wscd.com<br>phares@wscd.com<br>Obrien@wscd.com<br>strelyuk@wscd.com<br>jory@wscd.com | *Attorneys for Defendant Northfield Insurance Company:*<br><br>James T. Derrig<br>Law Office of James T. Derrig<br>14419 Greenwood Avenue N, Suite A-372<br>Seattle, WA 98133<br>206-414-7228<br>eservice.derriglaw@me.com<br>jim.derriglaw@me.com |

TIG'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 15
Case No. 3:14-CV-05097-RBL
121711.0002/6216734.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

| Attorneys for Defendant Admiral Insurance Company | Attorneys for Defendant AGCS Marine Insurance Company & Fireman's Fund Insurance Company: |
|---|---|
| John Bennett<br>Daniel R. Bentson<br>Bullivant Houser Bailey PC<br>1700 Seventh Avenue, Suite 1810<br>Seattle, WA 98101-1397<br>Tel: 206-292-8930<br>John.bennett@bullivant.com<br>Dan.bentson@bullivant.com<br>Trask.russill@bullivant.com | Joseph D. Hampton<br>Daniel L. Syhre<br>Betts Patterson & Mines, P.S.<br>One Convention Place, Suite 1400<br>701 Pike Street<br>Seattle, WA 98101-3927<br>Tel:206-292-9988<br>jhampton@bpmlaw.com<br>dsyhre@bpmlaw.com<br>dmarsh@bpmlaw.com<br>kfortune@bpmlaw.com<br>aklein@bpmlaw.com |

DATED December 1, 2014.

*/s/ Helen Van Buren*
Helen Van Buren

TIG'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 16
Case No. 3:14-CV-05097-RBL
121711.0002/6216734.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000  FAX: 206.223.7107